Filed 10/4/13

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MELISSA CHAPMAN et al., | B241398 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC462511) |
| v. | |
| SKYPE INC., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County,

Jane L. Johnson, Judge.  Reversed with directions.

Kawahito Shraga & Westrick, James K. Kawahito; Law Offices of

Geoffrey Stover and Geoffrey Stover for Plaintiffs and Appellants.

Bingham McCutchen, Michael A. Sherman, J. Warren Rissier, Nima Javaherian

and Robert Brundage for Defendant and Respondent.

Melissa Chapman, individually and on behalf of others similarly situated, appeals the dismissal of her class action complaint against Skype Inc. (Skype) after the sustaining of a demurrer without leave to amend. She alleges that Skype advertises its voice over Internet protocol calling plans as "Unlimited" when, in fact, the plans are limited as to the number of minutes per day and month and the number of calls per day. She contends she has adequately alleged counts for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), the false advertising law (Bus. & Prof. Code, § 17500), and the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), intentional and negligent misrepresentation, and unjust enrichment.

After a review of the record, we conclude that Chapman has adequately alleged counts for violation of the UCL, the false advertising law, and the CLRA based on deceptive advertising. She has failed, however, to allege her counts for intentional and negligent misrepresentation with sufficient specificity as to actual reliance, but she is entitled to an opportunity to amend her complaint as to those counts. She also is entitled to leave to amend her complaint to allege a rescission of the subscription agreement so as to support her count for unjust enrichment. We therefore will reverse the judgment with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

Skype provides voice over Internet protocol service that enables its customers to make calls to telephone numbers throughout the United States and to many foreign countries. It offers monthly calling plans that it describes as "Unlimited." For example,

Skype offers an "Unlimited World" calling plan that it describes as allowing "unlimited" calls to 40 countries. It also offers an "Unlimited US & Canada" plan.

On an Internet page listing its plans, a numerical superscript in the manner of a footnote designator appears immediately after the word "Unlimited" in the title "Unlimited US & Canada." The numerical superscript in the title references a link at the bottom of the page stating in a much smaller font, mostly in blue text, "A fair usage policy applies." This link leads the reader to the terms of the "Fair Usage Policy" on another page.

The "Fair Usage Policy" states that the calling plan is limited to 6 hours per day, 10,000 minutes per month and 50 numbers called per day. It states that calls in excess of these limits will incur the "normal rates and connection fees." The policy also states that calls to mobile telephones in 32 out of the 40 countries are not included.

Chapman purchased a subscription to the "Unlimited US & Canada" calling plan in December 2010. She believed at the time that there was no limit on either the number of minutes that she could use or the number of calls that she could make for a fixed monthly fee. She did not notice the language "fair usage policy" at the bottom of the Internet page and did not read the policy. She used her calling plan freely and was charged overage fees when her use exceeded the limits.

2.      *Trial Court Proceedings*

Chapman filed a class action complaint against Skype in May 2011 alleging that Skype has engaged in deceptive advertising and has misled its customers by labeling as "Unlimited" calling plans that are limited as to the number of minutes and number of

3

calls. She alleged on her own behalf and on behalf of others similarly situated throughout the United States counts for (1) unjust enrichment, seeking restitution and disgorgement; (2) negligent misrepresentation, seeking damages; (3) intentional misrepresentation, seeking damages; (4) violation of the UCL, seeking restitution, disgorgement and an injunction; (5) violation of the false advertising law, seeking restitution and disgorgement; and (6) violation of the CLRA, seeking damages, restitution, disgorgement and an injunction.

Skype filed a general demurrer to each count alleged in the complaint. The trial court stated at the hearing that the term "Unlimited" was qualified by the footnote on the same Internet page and that Chapman had failed to allege justifiable reliance. The court sustained the demurrer to each count with leave to amend.

Chapman filed a first amended complaint in December 2011 alleging the same six counts and seeking the same relief. She also alleged that she purchased the Skype subscription individually and not through any business entity and "used the subscription for both personal and business purposes and is thus a consumer for purposes of the Consumer Legal Remedies Act."

Skype filed a general demurrer to each count alleged in the first amended complaint.[1] Skype also requested judicial notice of excerpts from its website showing "the existence of the website, how it is set up and the manner in which it interacts with customers." It argued among other things that the website excerpts showed that a

---

[1] Skype also filed a motion for sanctions under Code of Civil Procedure section 128.7, which was scheduled for hearing at the same time as the demurrer.

4

subscriber was required to click a box affirming that "I agree to the <u>Skype Terms of Service</u>" before purchasing any subscription, and that a hyperlink at the underscored words took users to the terms of service stating that subscriptions are subject to the fair usage policy, with a hyperlink to the fair usage policy. Skype argued that such a "clickwrap" agreement is enforceable and that Chapman was bound by the terms of the fair usage policy.

Chapman opposed the demurrer and the request for judicial notice. She also requested judicial notice of a guide and a policy statement by the Federal Trade Commission (FTC) and a joint policy statement by the FTC and the Federal Communications Commission.

The trial court granted the requests for judicial notice and sustained the demurrer to each count without leave to amend. The court stated with respect to the count for unjust enrichment that, having agreed to be bound by Skype's terms of service, Chapman was bound by the terms of the fair usage policy. The court stated that the footnote reference to the fair usage policy was "clearly conspicuous" and, "because Defendant clearly disclosed the terms of its usage through the use of a superscript containing terms to which Plaintiff had to agree before she purchased the service, it cannot be said that defendant was unjustly enriched. Plaintiff clearly received the benefit of her bargain as she is deemed to have had actual notice of the terms of the contract she signed. <u>Loeffler v. Wright</u> (1910) 13 Cal.App. 224, 231. This finding informs the analysis of the discussion of the following causes of action." The court

sustained the demurrer to the counts for negligent and intentional misrepresentation for the same reasons.

The trial court concluded with respect to the counts for violation of the UCL and the false advertising law that Chapman had failed to adequately allege an unfair, fraudulent or unlawful business act or practice and failed to adequately allege a violation of the false advertising law. The court stated with respect to the "fraudulent" prong of the UCL and the false advertising law, "Defendant clearly disclosed the terms of its usage, and to which Plaintiff had to agree before she purchased the service . . . ."

The trial court also stated that Chapman had adequately alleged that she was a consumer for purposes of the CLRA, but concluded "the service representations were not unfair or deceptive." It stated further that Chapman "clearly indicated that she . . . read and understood the challenged conditions before purchasing the service. Indeed, since any party signing up for Skype service would have to agree to the Fair Usage Policy, plaintiffs have not shown that any customer of Skype would likely be deceived."

The trial court entered a judgment dismissing the complaint in April 2012. Chapman timely appealed the judgment.

## CONTENTIONS

Chapman contends (1) Skype's representations of its calling plans as "Unlimited" are false and deceptive, and the disclosure in its fair usage policy is inadequate to avoid misleading consumers; (2) she adequately alleges counts for violation of the UCL, the false advertising law and the CLRA, negligent and intentional

6

misrepresentation, and unjust enrichment based on false and deceptive advertising; and (3) she is entitled to leave to amend to correct any deficiency.

## *DISCUSSION*

1.  *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. *(McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1082.) The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. (*Ibid.*) The plaintiff can make that showing for the first time on appeal. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386. (*Careau*))

7

2.    *Chapman Adequately Alleges Counts for Violation of the UCL and the False Advertising Law Based on Deceptive Advertising*

a.    *The UCL and the False Advertising Law*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and any act prohibited by the false advertising law.  (Bus. & Prof. Code, § 17200.)  The false advertising law generally prohibits advertising that contains "any statement . . . which is untrue or misleading, and which is known, or should be known, to be untrue or misleading . . . ." (*Id.*, § 17500.)  The remedies available to a private plaintiff under the UCL and the false advertising law include injunctive relief and restitution.  (*Id.*, §§ 17203, 17535; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950 (*Kasky*).)

The UCL and the false advertising law "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'  [Citation.] Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that "members of the public are likely to be deceived." '  [Citations.]"  (*Kasky*, *supra*, 27 Cal.4th at p. 951.) This is determined by considering a reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is "the ordinary consumer within the target population."  (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 509-510.)  " 'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by

8

some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (*Id.* at p. 508.)

The question whether consumers are likely to be deceived is a question of fact that can be decided on a demurrer only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not likely to be deceived.  (*People v. McKale* (1979) 25 Cal.3d 626, 635; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1380-1381 (*Klein*); *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1257.)

b.　　*Chapman Adequately Alleges Deceptive Advertising*

Chapman contends Skype's representations of its calling plans as "Unlimited" are false and deceptive, and the disclosure in its fair usage policy is inadequate to avoid misleading consumers.  She argues that its use of the word "Unlimited" together with a disclaimer in the fair usage policy contradicting that express claim is deceptive as a matter of law.  We need not decide whether Skype's use of the word "Unlimited" constitutes a false statement for these purposes because the UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.  (*Kasky*, *supra*, 27 Cal.4th at p. 951.)  We also need not decide whether Skype's use of the word "Unlimited" in this context is deceptive as a matter of law, but only whether the trier of fact reasonably could conclude that consumers are likely to be deceived.  (*Ibid.*)

9

We conclude that the answer is yes. The trier of fact reasonably could conclude based on the facts alleged in the complaint and those judicially noticed that consumers are likely to believe that Skype's "*Unlimited* US & Canada" (italics added) calling plan offers *unlimited* calling within the United States and Canada for a fixed monthly fee, and that they will fail to notice the disclosure to the contrary in the fair usage policy. Again, the facts alleged and those judicially noticed are that a numerical superscript appears immediately after the word "Unlimited" in the title of the plan, which refers to a footnote at the bottom of the same Internet page stating in a much smaller font mostly in blue text, "A fair usage policy applies." The words "A fair usage policy" are linked to a separate page where limits on the "Unlimited" plan are set forth. A reasonable interpretation of the words "fair usage policy" is that they suggest a policy to protect against misuse of the service provided. They do not necessarily suggest to an ordinary consumer that the "Unlimited" plan is actually limited as to the number of minutes and number of calls. Those words therefore do not necessarily, and as a matter of law, alert a reasonable consumer to the need to follow the link to learn the details of those limits.

We believe on this record that whether a reasonable consumer would read the "Fair Usage Policy" and discover the limits on the "Unlimited" calling plan is a question of fact. We thus cannot conclude as a matter of law that those limits are so conspicuous and apparent that consumers are not likely to be deceived. (*Klein*, *supra*, 202 Cal.App.4th at p. 1381.) Moreover, the fact that Skype ultimately discloses the limits in its "Fair Usage Policy" does not excuse its practice of labeling the plan "Unlimited" in its initial dealings with potential customers. (*Chern v. Bank of America*

10

(1976) 15 Cal.3d 866, 876.)  We therefore conclude that Chapman adequately alleges deceptive advertising and that the sustaining of the demurrer to her counts for violation of the UCL and the false advertising law on this basis was error.[2]

c.      *Chapman Adequately Alleges Actual Reliance*

Skype also argues that Chapman fails to allege facts showing that she "suffered injury in fact and has lost money or property *as a result of*" the alleged violation (Bus. & Prof. Code, §§ 17204, 17535, italics added) for purposes of the UCL and the false advertising law and "suffer[ed] any damage *as a result of*" the alleged violation (Civ. Code, § 1780, italics added) for purposes of the CLRA.  To satisfy these requirements at the pleading stage a plaintiff must allege facts showing that he or she suffered an economic injury *caused by* the alleged violation.  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322, 326 (*Kwikset*).)  Because "reliance is the causal mechanism of fraud" (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 326), this requires pleading facts showing actual reliance, that is, that the plaintiff suffered economic injury as a result of his or her reliance on the truth and accuracy of the defendant's representations.  (*Kwikset*, *supra*, at pp. 326-327 & fn. 10.)

*Kwikset*, *supra*, 51 Cal.4th 310, involved allegations of false advertising in violation of the UCL and the false advertising law.  The plaintiffs alleged that they would not have purchased the product if not for the false representation that it was

---

[2]      In light of our conclusion, we need not decide whether Chapman adequately alleges an "unfair" business act or practice under Business and Professions Code section 17200.

11

"Made in U.S.A." (*Id.* at pp. 327-328.) *Kwikset* concluded that this "but for" allegation was sufficient to allege both causation and economic injury as required under Business and Professions Code section 17204. (*Id.* at p. 330.) Contrary to Skype's argument, however, *Kwikset* did not hold or suggest that an allegation that the plaintiff would not have purchased the product if not for the false representation was the only way to satisfy the causation requirement.

*Kwikset*, *supra*, 51 Cal.4th 310, stated that the California Supreme Court in *In re Tobacco II Cases, supra,* 46 Cal.4th 298, "held that a plaintiff 'proceeding on a claim of misrepresentation as the basis for his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions' ([*In re Tobacco II Cases, supra*,] at p. 306). Consequently, 'a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct . . . . ' (*In re Tobacco II Cases*, at p. 326.) However, a plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct.' (*Id.* at p. 328.)" (*Kwikset*, *supra*, at pp. 326-327.)

*In re Tobacco II Cases*, *supra*, 46 Cal.4th 298, explained: "While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. ' "It is not . . . necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so

12

has been a substantial factor, in influencing his decision." [Citation.] [¶] *Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material.* [Citations.] A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" [citations], and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." [Citation.]' (*Engalla v. Permanente Medical Group, Inc.*(1997) 15 Cal.4th 951, 976–977 [64 Cal.Rptr.2d 843, 938 P.2d 903].)" (*Id.* at pp. 326-327, italics added.)

Thus, actual reliance, or causation, is inferred from the misrepresentation of a material fact.[3] (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 327.) To satisfy the requirement of pleading actual reliance, or causation, in connection with false advertising for purposes of the UCL and the false advertising law, a plaintiff need only allege a misrepresentation of a material fact. The materiality of a misrepresentation is generally a question of fact unless the misrepresentation was so obviously unimportant that the trier of fact could not reasonably conclude that a reasonable person would have been influenced by it. (*Ibid.*) In our view, the materiality of Skype's alleged representation that the calling plans were "Unlimited" is a question of fact that cannot be decided as a question of law on this record. We therefore conclude that by alleging

---

[3]    We use the term "misrepresentation" in this context to refer to both a false misrepresentation and a representation that is likely to deceive a reasonable person.

13

a material misrepresentation Chapman adequately alleges actual reliance for purposes of the UCL and the false advertising law.[4]

3. *Chapman Adequately Alleges a Count for Violation of the CLRA*

The CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale or lease of goods or services to a consumer (Civ. Code, § 1770, subd. (a)), including misrepresenting the characteristics, uses or benefits of goods or services, and advertising goods or services with the intent not to sell them as advertised. (*Id.*, subd. (a)(5), (9).) A consumer who suffers damage as a result of a prohibited act or practice can sue for damages, restitution, and an injunction, but before suing for damages must first notify the defendant of the alleged violation and allow the defendant an opportunity to remedy it. (*Id.*, §§ 1780, subd. (a), 1782.) Civil Code section 1760 states that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

Chapman contends Skype misrepresented its calling plan as "Unlimited" when in fact it was limited as to the number of minutes and number of calls. The standard for determining whether a defendant misrepresented the characteristics, uses or benefits of goods and services under Civil Code section 1770, subdivision (a)(5) is the same as that for determining whether there was false advertising under the UCL and the false

---

[4]     Our conclusion is the same with respect to the count for violation of the CLRA for the same reasons.

14

advertising law. (*Klein v. Chevron U.S.A., Inc., supra,* 202 Cal.App.4th at p. 1382; see *Kasky, supra,* 27 Cal.4th at p. 951.) Thus, the question is whether the representation was likely to deceive consumers. (*Klein, supra,* at p. 1382.)

We conclude that whether a reasonable consumer is likely to be deceived by the representation that the calling plan is "Unlimited" is a question of fact for the reasons we have stated. We therefore conclude that Chapman adequately alleges deceptive advertising for purposes of the CLRA and that the sustaining of the demurrer on this basis was error.

4. *Chapman Is Entitled to Leave to Amend her Complaint as to the Counts for Negligent and Intentional Misrepresentation*

a. *Chapman Adequately Alleges a Misrepresentation*

The essential elements of a count for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088-1089 & fn. 2.) The essential elements of a count for negligent misrepresentation are the same except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true. (Civ. Code, § 1710, subd. 2; *Gagne v. Bertran* (1954) 43 Cal.2d 481, 488; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.) Each element of a fraud count must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of

15

action, although less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217.)

Skype challenges the first and fourth elements. Chapman alleges that Skype represented that its calling plans were "Unlimited," when in fact they were limited as to the number of minutes and number of calls. She alleges that she relied on this representation and believed at the time that she initially purchased a subscription that the plan was unlimited, and that she suffered damage when she incurred additional fees for calls that should have been included in the advertised monthly fee.

In our view, Chapman adequately alleges a misrepresentation of fact based on Skype's use of the word "Unlimited" to describe calling plans that were not unlimited. Whether Skype disclosed the limits in a manner that would avoid any deception goes mainly to the issue of justifiable reliance. This is a question of fact. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) On this record, we cannot conclude that the limits disclosed in the fair usage policy were so conspicuous and apparent as to compel the conclusion as a matter of law that Chapman's reliance on the representation that the plan was "Unlimited" was unjustified.

b. *Chapman Is Entitled to Leave to Amend to Allege Actual Reliance*

Skype argues that Chapman fails to allege with the required specificity that she would not have purchased a subscription if she had known that the calling plan was limited, and the fact that she twice renewed her subscription after learning of the limits shows that she did not actually rely on its characterization of the plan as "Unlimited."

16

To allege actual reliance on misrepresentations with the required specificity for a fraud count, " '[t]he plaintiff must plead that he believed the representations to be true . . . and that in reliance thereon (or induced thereby) he entered into the transaction. [Citation.]' [Citation.]" (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1063.)  Chapman requests leave to amend her complaint to allege that she would not have purchased a subscription if she had known that the calling plan was limited, and is entitled to leave to so amend. (*Careau*, *supra*, 222 Cal.App.3d at p. 1386.)

We reject the argument that Chapman cannot satisfy the element of actual reliance.  She does not allege in her complaint that she renewed her subscription, and that purported fact is not judicially noticeable.  Skype relies instead on evidence submitted in support of its motion for sanctions, but such evidence cannot be considered in ruling on a demurrer.  (See 5 Witkin, California Procedure (5th ed. 2008) Pleading § 946, pp. 360-361.)  We express no opinion as to whether her purported renewals compel the conclusion that Chapman would have purchased a subscription even if she had known of the limits.

Skype also argues that Chapman could not have justifiably relied on any misrepresentation about the terms of her subscription after being afforded a reasonable opportunity to read the subscription agreement, citing *Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394 (*Rosenthal*).  We disagree.  The California Supreme Court in *Rosenthal* held that a party claiming fraud in the execution of a contract must prove that he or she had no reasonable opportunity to learn the character or the essential terms of the document he or she was signing.  (*Id.* at p. 423.)

17

A party cannot establish fraud in the execution if he or she failed to read the contract despite having had a reasonable opportunity to do so. (*Ibid.*) *Rosenthal* stated that statements assuring the plaintiffs that the written agreements were unimportant, "even if falsely and fraudulently made, do not void a written contract, because it is generally unreasonable, in reliance on such assurances, to neglect to read a written agreement before signing it." (*Id.* at p. 424.)

*Rosenthal* distinguished fraud in the execution, where the promisor does not know what he or she is signing or does not intend to enter into a contract at all, rendering the contract void, from fraud in the inducement, where the promisor knows what he or she is signing but his or her consent is induced by fraud, rendering the contract voidable. (*Rosenthal*, *supra*, 14 Cal.4th at p. 415.) *Rosenthal* also distinguished cases holding that a plaintiff may obtain equitable relief from the terms of a contract that was procured through fraud in the inducement despite his or her negligence in failing to read the contract or otherwise failing to discover the facts.[5] (*Id.* at pp. 421-423.) Although the failure to read a contract precludes a claim of fraud in the execution, so as to render the contract completely void (*id.* at p. 423), it does not necessarily preclude equitable relief from the contract terms based on a misrepresentation. (*Van Meter v. Bent Construction Co.* (1956) 46 Cal.2d 588, 595

---

[5] *Rosenthal* expressed no opinion as to the validity of the rule allowing equitable relief from the terms of a contract based on fraud in the inducement despite the plaintiff's negligence, but held only that the rule is inapplicable when the plaintiff alleges that the contract is void for fraud in the execution. (*Rosenthal*, *supra*, 14 Cal.4th at p. 423.)

[stating that the plaintiff's reliance on the defendant's misrepresentation does not preclude the reformation of a contract "unless plaintiff's conduct, in the light of his intelligence and information, is preposterous or irrational"]; *California Trust Co. v. Cohn* (1932) 214 Cal. 619, 627 [stating that the reformation of a contract is proper if the plaintiff's failure to read the contract was induced by the defendant's misrepresentation and fraud].)

Chapman does not allege fraud in the execution or contend the contract is void, so *Rosenthal*, *supra*, 14 Cal.4th 394, is not on point.[6] Moreover, she did not rely on assurances that the contract was unimportant and entirely fail to read the contract, as in *Rosenthal*, but instead read and relied on a representation in the subscription agreement that the plan was "Unlimited." We conclude that Chapman's failure to read the entire subscription agreement does not necessarily preclude her justifiable reliance on a representation in the subscription agreement that the plan was "Unlimited," for purposes of negligent and intentional misrepresentation.

As we have discussed, we cannot, on this record, conclude as a matter of law that the limits disclosed in the fair usage policy were so conspicuous and apparent that Chapman's reliance on the representation that the plan was "Unlimited" necessarily was unjustified.

---

[6] Just as *Rosenthal*, *supra*, 14 Cal.4th at page 423, held that the rule allowing equitable relief from the terms of a contract based on fraud in the inducement is inapplicable when the plaintiff alleges that the contract is void for fraud in the execution, we conclude that the rule from *Rosenthal* is inapplicable and does not preclude justifiable reliance when a party seeks damages for fraud and does not allege that the contract is void for fraud in the execution.

5.      *Chapman Is Entitled to Leave to Amend her Complaint
        as to the Count for Unjust Enrichment*

"Unjust enrichment is synonymous with restitution.  [Citation.]"  (*Durell v.*

*Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 (*Durell*).)  A person is required

to make restitution if the failure to do so would result in unjust enrichment.  (*First*

*Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662-1663.)  Restitution of

the benefits conferred under a contract may be awarded if the contract is rescinded or

determined to be unenforceable.  (*Durell*, *supra*, at p. 1370; see 1 Witkin, Summary of

Cal. Law (10th ed. 2005) Contracts, § 1042, pp. 1132-1133.)  Restitution based on

unjust enrichment is not available, however, if an enforceable express contract

determines the parties' rights and obligations.  (*Durell*, *supra*, at p. 1370.)

A party alleging that she was fraudulently induced to enter into a contract may

either rescind the contract, offer to restore any benefits received, and seek restitution or

retain the benefits of the contract and seek damages for fraud.[7]  (*Denevi v. LGCC, LLC*

(2004) 121 Cal.App.4th 1211, 1220; see 5 Witkin, Summary of Cal. Law (10th ed.

2005) Torts, §§ 827-828, pp. 1200-1201.)  A rescission requires prompt notice to the

other party to the contract and an offer to restore any consideration received.  (Civ.

Code, § 1691.)  "When notice of rescission has not otherwise been given or an offer to

restore the benefits received under the contract has not otherwise been made, the service

---

[7]      A plaintiff ordinarily may pursue inconsistent remedies in her complaint and
need not make an election of remedies at the pleading stage.  (*Roam v. Koop* (1974)
41 Cal.App.3d 1035, 1039.)  Skype does not contend the election of remedies doctrine
precludes any count alleged in the complaint, so we need not consider the issue.

of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (*Ibid.*)

Chapman alleges in her count for unjust enrichment that Skype falsely represented that the calling plans were "Unlimited" and that it would be inequitable for Skype to retain the subscription fees and overage charges paid. She does not allege that the subscription agreement is unenforceable or that she rescinds the agreement. Her failure to do so compels the conclusion that the sustaining of the demurrer was proper based on the existence of an enforceable express contract. Chapman argues on appeal, however, that she is entitled to a rescission based on fraud. We construe her argument as a request for leave to amend her complaint to expressly allege, in the alternative to her counts for intentional and negligent misrepresentation, that she rescinds the subscription agreement, seeks restitution, and offers to restore the consideration received. We conclude that she is entitled to leave to so amend her complaint. (*Careau*, *supra*, 222 Cal.App.3d at p. 1386.)

### *DISPOSITION*

The judgment is reversed with directions to the trial court to vacate its order sustaining the demurrer to all counts without leave to amend and enter a new order (1) sustaining the demurrer to the first, second, and third counts with leave to amend, and (2) overruling the demurrer to the fourth through sixth counts. Chapman shall recover her costs on appeal.

### *CERTIFIED FOR PUBLICATION*

CROSKEY, J.

WE CONCUR:


KLEIN, P. J.



ALDRICH, J.