Filed 2/10/26  JAJ3 v. Bren CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAJ3, LLC, | B333853 & B339029 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21SMCV00722) |
| v. | |
| CARY BREN, | |
| Defendant and Respondent. | |

APPEALS from a judgment and order of the Superior Court of Los Angeles County, Lisa K. Sepe-Wiesenfeld, Judge. Affirmed.

Law Offices of Robert H. Bisno and Robert H. Bisno for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis and Charles D. Jarrell for Defendant and Respondent.

———————

Plaintiff and appellant JAJ3, LLC (JAJ3) appeals from a judgment of dismissal and award of attorney fees to defendant and respondent Cary Bren. The trial court sustained without leave to amend Bren's demurrer to JAJ3's operative complaint, finding that JAJ3's causes of action were barred by judicial estoppel and claim splitting, and the complaint failed to allege facts sufficient to state a cause of action. The trial court thereafter granted Bren's motion for attorney fees under Civil Code[1] section 1717, finding that JAJ3's action was on a contract that contained an attorney fees provision.

JAJ3 appeals from both the judgment of dismissal and the order granting Bren attorney fees.[2] As to the demurrer, JAJ3 contends that the trial court erred in applying the doctrines of judicial estoppel and claim splitting. As to the attorney fees order, JAJ3 contends its action was not "on a contract" within the meaning of section 1717. We conclude that JAJ3 failed to allege facts sufficient to state a cause of action, and the trial court properly granted Bren his attorney fees. Accordingly, we affirm the judgment and order granting attorney fees.

---

[1] All further undesignated statutory references are to the Civil Code.

[2] We have consolidated the appeals for the purposes of oral argument and the opinion.

2

## BACKGROUND

### I. The parties[3]

Bren and his brother-in-law Dan Palmer are members and managers of an entity called BP3, LLC (BP3). BP3 is the majority owner and a manager of a second entity, Portland Lloyd Center Community, LLC (Portland), and JAJ3 is Portland's minority owner and a manager. Portland is the sole member of a third entity, PLCC1, LLC (PLCC1), which is managed by other parties.

### II. The Sonoma action[4]

In 2020, JAJ3 and other parties filed a cross-complaint in an action in Sonoma County Superior Court, *Mosaic Vintage Oaks, LLC v. Dan S. Palmer, Jr. et al.* (case No. SCV-266510) (the Sonoma action). The Sonoma action appears to concern a loan that PLCC1 obtained to buy an apartment building in Oregon. Bren was not named as a party in that action. As relevant here, JAJ3 alleged in its cross-complaint that around the time PLCC1 obtained the loan, Bren wanted to sell his interests in various companies to Palmer. Palmer used some of PLCC1's loan proceeds to buy Bren's interests for $1.5 million, which was

---

[3]  We state the facts in a manner consistent with the standard governing our review, accepting as true all well-pleaded material allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

[4]  Attorney Robert Bisno represented JAJ3 below and on appeal in this case, and he filed the cross-complaint in the Sonoma action on behalf of himself, JAJ3, and other entities. According to Bren's demurrer, Bisno formed JAJ3 and other companies to hold real estate and other interests.

a significant discount given that the aggregate value of Bren's interests in projects was over $130 million. By buying Bren's interests, Palmer increased his stake in various properties and deprived JAJ3 and others of a stake in them, allegedly in violation of Palmer's contractual and fiduciary duties.

## III. JAJ3's complaint and first amended complaint; Bren's demurrers

In 2021, JAJ3 filed this action in Los Angeles Superior Court, naming Bren as defendant and PLCC1 and Portland as nominal defendants. The complaint alleged four causes of action against Bren, including breach of contract and breach of the implied covenant of good faith and fair dealing. Bren demurred to the complaint, and JAJ3 filed a first amended complaint, mooting the demurrer.

JAJ3's first amended complaint alleged that Bren, in cooperation with Palmer, caused at least $1.5 million "to be converted, stolen and provided to and embezzled by Bren, contrary to the operating [a]greements of PLCC1 and [Portland]." (Capitalization omitted.) The complaint alleged that this conduct gave rise to four causes of action: (1) tort of another, (2) breach of fiduciary duty, (3) intentional interference with contractual relations; and (4) violation of Business and Professions Code section 17200.

Bren demurred to the first amended complaint on the grounds, among others, that JAJ3 made judicial admissions in the Sonoma action that barred its claims in the current action, the operating agreements attached to the complaint barred the fiduciary duty cause of action, and JAJ3 failed to allege facts sufficient to constitute a cause of action for intentional interference with contractual relations.

4

The trial court sustained the demurrer as to JAJ3's causes of action for tort of another and for violation of Business and Professions Code section 17200 without leave to amend.[5] It sustained the demurrer as to the causes of action for breach of fiduciary duty and intentional interference with contractual relations on four separate grounds *with* leave to amend. First, the court found that JAJ3 made judicial admissions in the Sonoma action—namely, that Bren received $1.5 million through a sale of his interests to Palmer—that were fundamentally inconsistent with JAJ3's claims in the present action that Bren stole or embezzled $1.5 million. Second, the court said JAJ3 "improperly split its claims" by suing Palmer and Bren in separate actions. Third, the court found that JAJ3 failed to state a claim for breach of fiduciary duty because although the operative complaint alleged that Bren owed fiduciary duties under the Portland and PLCC1 operating agreements, Bren "was neither a party to them nor mentioned as having any specific role other than signing for transactions." Finally, the court found that JAJ3 failed to state a claim for intentional interference with contract because the complaint did not allege what specific conduct allegedly constituted the interference or explain how such conduct interfered with JAJ3's contractual relationships with Portland or PLCC1.

## IV.    The second amended complaint

JAJ3's operative second amended complaint reasserted causes of action for breach of fiduciary duty and interference with

---

[5]     JAJ3 does not challenge the dismissal of these causes of action, and we therefore do not discuss the trial court's ruling as to them.

contractual relations. It again alleged that PLCC1 obtained a loan to buy real property in Oregon, and that Bren "was not entitled to any of" the loan proceeds but, acting with Palmer, unlawfully "took and/or received[] at least $1,500,000" from PLCC1 or Portland. (Capitalization and bold omitted.) Bren's receipt of PLCC1's loan proceeds breached fiduciary duties Bren owed to PLCC1 and Portland as the controlling manager of Portland's majority owner, and it interfered with JAJ3's rights under Portland's and PLCC1's operating agreements.

Bren demurred to the second amended complaint on the grounds that the causes of action against Bren were improperly split from claims against Palmer in the Sonoma action; Bren was not a party to Portland's and PLCC1's operating agreements and therefore owed no fiduciary duties to those entities; judicial estoppel barred the complaint; JAJ3's judicial admissions in the Sonoma action barred the current action; and JAJ3 failed to allege how Bren interfered with Portland's and PLCC1's operating agreements.

JAJ3 opposed the demurrer and sought leave to file a third amended complaint to add causes of action for aiding and abetting breach of fiduciary duties and for conspiracy to breach fiduciary duties. In the proposed complaint, JAJ3 alleged that Bren aided and abetted Palmer's breach of fiduciary duties owed to Portland and PLCC1, and Bren and Palmer conspired to breach those fiduciary duties.

## V. Order sustaining demurrer and denying leave to file third amended complaint

The trial court sustained Bren's demurrer without leave to amend and denied JAJ3's motion for leave to file a third amended complaint. The trial court again concluded that JAJ3 had

6

improperly split its claims between this action and the Sonoma action as both involved "the same transaction," specifically, Bren's receipt of $1.5 million from PLCC1. The trial court noted that Bren was not a party to the Sonoma action, and Palmer was not a party to the present action.

Next, the trial court found that JAJ3 took contrary positions in the two actions; namely, the present action alleged that Bren and Palmer embezzled $1.5 million from PLCC1, while the Sonoma action alleged that Bren had sold his interests to Palmer. "Given that [JAJ3's] position as to the $1,500,000 was the basis of his cross-complaint in the Sonoma action, the Court must conclude that the Sonoma County court accepted this allegation as Plaintiff's theory of the case, and this position was totally inconsistent with the position advanced herein. The Court lacks a basis to conclude that [JAJ3's] position in the Sonoma action was the result of ignorance, fraud, or mistake."

Turning to the individual causes of action, the trial court found it "unclear" how Bren owed a fiduciary duty under the PLCC1 or Portland operating agreements when he was not a party to them or "mentioned as having any specific role." The court said it "cannot hold [Bren] liable under these agreements . . . when he did not sign the agreements, and there is no mention of him in either agreement." As to the cause of action for intentional interference with contractual relations, JAJ3 alleged "no specific facts" suggesting how Bren's taking of $1.5 million interfered with the operating agreements.

The trial court then denied JAJ3 leave to file a third amended complaint to add causes of action for aiding and abetting Palmer's breach of fiduciary duties and conspiracy to breach fiduciary duties. The trial court found that the proposed

7

new "claims, too, are barred by the rule against claim splitting. The Sonoma action concerned Palmer's breach of fiduciary duty. It is clear that claims for aiding and abetting this breach and a conspiracy to commit such breach could have been brought in the Sonoma action."

Finally, the trial court referred to a motion JAJ3 had filed for leave to file a fourth amended complaint to add causes of action for aiding and abetting breach of fiduciary duties, conspiracy to breach fiduciary duties, theft/conversion, and violation of Penal Code section 496 for receipt of stolen property. At the hearing, the trial court declined to consider the motion because it had not been calendared for hearing that day and JAJ3 had "not expressed a desire" to take the motion for leave to file the third amended complaint off calendar.

The trial court entered judgment for Bren in August 2023.

## VI.   Bren's motion for attorney fees

After the trial court entered judgment, Bren filed a motion seeking attorney fees of $165,008 under Portland's and PLCC1's operating agreements. Bren urged that JAJ3's action was " 'on a contract' " within the meaning of section 1717 because JAJ3's original complaint alleged breach of the operating agreements, and the operative second amended complaint alleged breach of fiduciary duties arising under those operating agreements. Bren therefore contended that he was entitled to recover his attorney fees because, had JAJ3 prevailed on its claims that Bren was a party to the operating agreements, it could have recovered its attorney fees under the agreements.

In its opposition to the motion, JAJ3 argued that the operative second amended complaint alleged breach of fiduciary duty and intentional interference with contractual relations,

8

which were not claims based on a contract. Further, Bren was not a party to Portland's and PLCC1's operating agreements, and he therefore could not benefit from any attorney fees provision in those agreements.

The trial court found that the operating agreements underlying JAJ3's complaint allowed "the prevailing party to recover attorney fees. While [Bren] was not a party to these agreements, Plaintiff asserted he was . . . . Thus, [Bren] is entitled to fees here." The trial court awarded Bren attorney fees in the amount of $97,965.

JAJ3 timely appealed from the judgment and order awarding attorney fees.

## DISCUSSION

### I. JAJ3 has not demonstrated that the trial court erred by sustaining the demurrer

A demurrer tests the legal sufficiency of a complaint's factual allegations. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 225–226.) "We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. . . . We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons." (*Ibid.*)

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) And, of course, we will uphold the decision

9

of the trial court if it is correct on any ground.  (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 769.)  [¶] In light of those principles and presumptions, the burden is on [appellant] to demonstrate error—and also 'prejudice arising from' that error."  (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006.)

Below, the trial court sustained Bren's demurrer to the remaining two causes of action for breach of fiduciary duty and interference with contract on three grounds:  (1) judicial estoppel, (2) claim splitting, and (3) failure to allege facts sufficient to constitute the causes of action.  To demonstrate that the trial court erred, therefore, JAJ3 must demonstrate that *none* of these grounds was a proper basis for sustaining the demurrer.  (*Chapman v. Skype Inc.*, *supra*, 220 Cal.App.4th at pp. 225–226; *California Resources Production Corp. v. Antioch City Council* (2024) 107 Cal.App.5th 481, 489 [" ' "We affirm if any ground offered in support of the demurrer was well taken" ' "]; *Sonoma Luxury Resort LLC v. California Regional Water Quality Control Bd.* (2023) 96 Cal.App.5th 935, 940–941 [" 'In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error.  Specifically, the appellant must show that the facts pleaded are sufficient to . . . overcome all legal grounds on which the trial court sustained the demurrer' "].)  If JAJ3 fails to do so, the judgment of dismissal must be affirmed.

In its opening brief, JAJ3 urged that the trial court erred by sustaining the demurrer based on judicial estoppel and claims splitting.  However, JAJ3 did not address the third basis on which the court sustained the demurrer—i.e., that the operative complaint failed to state a claim for breach of fiduciary duty or interference with contract.  JAJ3 attempted to rectify this

10

omission in its appellant's reply brief by contending that the complaint stated a claim for breach of fiduciary duty—but it again did not address its interference with contract claim.

Our appellate review is limited to issues " 'which have been adequately raised and briefed.' " (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230, quoting *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.) To properly brief an issue for appellate review, " 'an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146; *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)  Because JAJ3 has not made a cogent appellate argument demonstrating that it stated a claim for interference with contract, the contention is forfeited.  (See *United Grand Corp.*, at p. 146.)  Indeed, JAJ3 has not addressed the cause of action specifically at all in its briefs on appeal.

We reach the same conclusion with regard to JAJ3's claim for breach of fiduciary duty.  Generally, we do not consider arguments raised by appellants for the first time in a reply brief. (See, e.g., *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178; *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6; *Holmes v. Petrovich Development Co.* (2011) 191 Cal.App.4th 1047, 1064, fn. 2 [argument forfeited where it is raised for first time in reply without showing of good cause].)  JAJ3's failure to address the adequacy of its breach of fiduciary duty claim in its opening brief, therefore, forfeited the issue.

But even were we to consider JAJ3's contentions in its reply brief, we nonetheless would affirm the judgment.  The

11

operative complaint alleged that Bren's receipt of PLCC1's loan proceeds violated Bren's fiduciary duties to PLCC1 and Portland. This claim presupposes that Bren *had* fiduciary duties to PLCC1 and Portland. That is, the elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) The operative complaint alleged that Bren owed fiduciary duties to PLCC1 and Portland because Bren was a manager of BP3, which was a manager and majority owner of Portland. As a result, the complaint alleged, "[t]he fiduciary duties required of Bren run in favor of Plaintiff [JAJ3] [and] Nominal Defendants [PLCC1 and Portland]." (Capitalization omitted.) But JAJ3's reply brief does not persuasively explain why Bren, an individual, owes a fiduciary duty in the context of the factual allegations and the complex law governing limited liability companies. Bren is not a party to PLCC1's or Portland's operating agreements, and he was not alleged to have had a relationship to them in his individual capacity. Rather, Bren's alleged relationship to those companies is as a member and manager of BP3, which in turn was a manager of Portland, the sole member of PLCC1. Bren, as a manager of BP3, presumably owes a fiduciary duty to BP3. (See generally Corp. Code, § 17704.09; *People v. Pacific Landmark, LLC* (2005) 129 Cal.App.4th 1203, 1212.) And BP3 may owe a fiduciary duty to Portland as its manager. But BP3 is not a party to this action, and JAJ3 has cited no legal authority for the proposition that these nested relationships created a fiduciary relationship between Bren, on the one hand, and PLCC1 and Portland, on the other.

12

JAJ3 attempts to establish that Bren owed PLCC1 and Portland fiduciary duties by citing general principles of law—for example, that fiduciary duties need not be based in contract, that a third party who knowingly assists in a breach of fiduciary duty may be held liable for such breach, that corporate officers have fiduciary duties to minority shareholders, and that corporate directors may not use their power or corporate property for their own advantage. But "[m]ere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) Because the general principles of law that JAJ3 cites are inadequate to support the conclusion that Bren owed a fiduciary duty to Portland or PLCC1, the issue is forfeited. (See, e.g., *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [arguments unsupported by reasoned argument and authority are forfeited]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [absence of cogent legal argument or citation to authority allows court to treat contention as waived]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [appellate court is not required to examine undeveloped claims or make arguments for parties]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [we do not develop appellants' arguments for them].) We therefore conclude that the trial court did not err by sustaining Bren's demurrer to the second amended complaint.

13

## II. The trial court did not err by denying JAJ3 leave to file a third amended complaint

A motion to file an amended complaint should be granted if there is a reasonable probability a defect can be cured by amendment. (*Chapman v. Skype Inc.*, *supra*, 220 Cal.App.4th at pp. 225–226.) The plaintiff has the burden to demonstrate how the complaint can be amended to state a valid cause of action. (*Ibid.*; *People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 532–533.)

JAJ3 contends that the trial court erred in denying leave to amend its complaint to add causes of action for aiding and abetting a breach of fiduciary duty and for conspiracy to breach fiduciary duties. Not so. " ' "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846; Rest.2d Torts, § 876.)' (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325–1326.)" (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144.) The proposed causes of action thus require JAJ3 to show that Bren had a fiduciary duty to Portland and PLCC1 that he breached by aiding and abetting or conspiring with Palmer, or that Palmer had such fiduciary duties. Because JAJ3 has not demonstrated a legal basis for those asserted fiduciary duties, the trial court did not err by denying JAJ3 leave to amend its complaint.

14

Nor did the trial court err by not considering the motion for leave to file the fourth amended complaint. As the trial court said, that motion was not calendared for hearing at the same time as the demurrer to the second amended complaint and the motion for leave to file the third amended complaint. Instead, it was calendared for a hearing months later, in September 2023. Thus, as the trial court suggested, its ruling on the demurrer and motion for leave to file a third amended complaint mooted JAJ3's motion for leave to file a fourth amended complaint. Also, JAJ3 did not ask the trial court to consider the motion for leave to file a fourth amended complaint at the demurrer hearing and, moreover, counsel for JAJ3 did not argue that he could amend the operative complaint to allege any of the proposed causes of action in the fourth amended complaint. In sum, the motion for leave to file a fourth amended complaint was not on calendar, the trial court's order sustaining without leave to amend the demurrer to the second amended complaint mooted the motion, and counsel for JAJ3 did not raise any issue regarding that proposed fourth amended complaint at the hearing.

### III. The trial court did not err by awarding Bren attorney fees

JAJ3 contends, finally, that the trial court erred by awarding Bren attorney fees because the causes of action in the operative complaint were not based on a contract, as required by section 1717, and Bren was not a party to a contract containing an attorney fees provision.[6] Both claims lack merit.

---

[6] JAJ3 contends that Bren's right to attorney fees is governed by Delaware law, but he does not discuss any relevant

15

Section 1717, subdivision (a) provides: "In *any action on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, *whether he or she is the party specified in the contract or not*, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.) "[A] determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

JAJ3's original complaint alleged causes of action for breach of contract—i.e., breach of PLCC1's and Portland's operating agreements—and breach of the implied covenant of good faith and fair dealing implied in those agreements. Actions alleging breach of contract and breach of the implied covenant of good faith and fair dealing are "on a contract" within the meaning of section 1717. (See *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486 [breach of contract]; *Schoolcraft v. Ross* (1978) 81 Cal.App.3d 75, 82 [breach of implied covenant].) The original complaint, thus, alleged causes of action subject to section 1717.[7]

provisions of Delaware law or suggest that Delaware and California law differ.

[7]     JAJ3's response that the original complaint is irrelevant because the second amended complaint superseded it is unavailing. An amended pleading supersedes a prior pleading for the purposes of, for example, framing the issues at trial (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 883–884) and on a motion for summary judgment (*State Compensation Ins. Fund v.*

We reach the same result with regard to the operative second amended complaint, which alleged that Bren breached fiduciary duties that arose under the relevant contracts. California courts "liberally construe the term 'on a contract' in Civil Code section 1717." (*Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388, 393, citing *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.) " 'Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. [Citation.] If unclear the action will be considered based on contract rather than tort. [Citation.] [¶] In the final analysis we look to the pleading to determine the nature of plaintiff's claim.' " (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178–1179.) Courts accordingly have found tort causes of action to support attorney fees awards if the tort causes of action rest on allegations that a party breached a duty, including a fiduciary duty, created by a contract. (See, *ibid.* [action for breach of a fiduciary duty that was assumed "only by entering [a] contract" is an action "on a contract"]; *Fairchild v. Park* (2001) 90

---

*Superior Court* (2010) 184 Cal.App.4th 1124, 1130–1131). Thus, while a superseded complaint ceases to perform any function as a pleading (*State Compensation*, at p. 1130), the role of JAJ3's original complaint here is not as a pleading that frames the issues on a dispositive motion or at trial. Rather, its role on a motion for attorney fees brought under section 1717 is to determine on what theories JAJ3 sued. JAJ3 cites no authority that it is improper to consider *all* of its pleadings to determine whether it brought an action on a contract against Bren in this context.

Cal.App.4th 919, 925 [breach of warranty of habitability]; *Artnz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 478–479 [intentional interference with prospective economic advantage].)

Here, the operative complaint alleged that Bren violated fiduciary duties that arose "under the Operating Agreements of Portland [] and PLCC1." The complaint also alleged that Bren violated fiduciary duties by violating the express terms of the operating agreements. The action thus asserted that Bren's fiduciary duties were created by the agreements instead of alleging any duty independent of them. Accordingly, JAJ3's action was on the contract within the meaning of section 1717.

JAJ3 contends that even if its action was on a contract, Bren could not recover attorney fees under Portland's and PLCC1's operating agreements because he was not a signatory to them. Not so. Section 1717 establishes mutuality of the attorney fees remedy. Thus, "when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611; *Korech v. Hornwood* (1997) 58 Cal.App.4th 1412, 1418–1419 [attorney fees award under § 1717 proper when party sued is not party to the contract or no enforceable contract was formed, as long as plaintiff would have been allowed attorney fees had it prevailed in enforcing contractual obligation].)

Below, Bren sought attorney fees pursuant to Portland's operating agreement, which contained two attorney fees provisions. Paragraph 7.2 provided: "In any dispute between or

18

among, the Company, the Members and/or the Managers, or any combination thereof, the prevailing party(ies) shall be entitled to recover from the non-prevailing party all attorneys' and expert's fees and costs." Separately, paragraph 8.5 provided: "In the event legal proceedings shall arise to enforce or interpret the whole or any part of this Agreement, or with respect to any dispute arising out of or relating to this Agreement, the Company or any of its business[,] the prevailing party therein shall be entitled to its reasonable attorney fees, costs, and expenses."[8] The operating agreement was signed by its "[m]embers": JAJ3, through Robert Bisno, CEO of Bisno Real Estate Group, LLC; and BP3, through Dan Palmer.

As a member and signatory to Portland's operating agreement, JAJ3 would have been entitled to recover its attorney fees had it prevailed in this action because the action was a "dispute between or among" a "Member[]" (JAJ3) and "the Company" (Portland), a nominal defendant. Under section 1717's mutuality provision, therefore, although Bren was not a signatory to the operating agreement, he could also recover his attorney fees as the prevailing party. (§ 1717, subd. (a) [where § 1717 applies, the party who is determined to be the party prevailing on the contract, "*whether he or she is the party specified in the contract or not*, shall be entitled to reasonable attorney's fees in addition to other costs"], italics added; *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 ["Its purposes require section 1717 be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he

---

[8]     Contrary to Bren's contention, PLCC1's operating agreement does not contain an attorney fee provision.

were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant"]; see *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 823 ["It is well settled a breach of contract claim based on an alter ego theory is still a claim on the contract and a nonsignatory that successfully defends against the claim may recover its attorney fees under section 1717"].)

Finally, the doctrine of judicial estoppel does not prevent Bren from arguing that the action was on a contract. Judicial estoppel "precludes a party from taking inconsistent positions in separate judicial proceedings." (*The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841.) It applies where " '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987.) Bren has not taken an inconsistent position in separate proceedings. Rather, in this proceeding, Bren has consistently claimed not to be a party to Portland's operating agreement. That claim is consistent with his request for attorney fees under section 1717, which, as we have explained, allows mutuality of attorney fees for a party who prevails in an action on a contract by establishing that the contract is inapplicable, unenforceable, or nonexistent, so long as the opposing party would have been entitled to attorney fees under the contract had it prevailed. (*Santisas v. Goodin, supra*, 17 Cal.4th at p. 611.)

## DISPOSITION

The judgment and postjudgment order are affirmed. Respondent Bren is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.