[No. H025401. Sixth Dist. Aug. 30, 2004.]

PIETRO G. DENEVI, Plaintiff and Appellant, v.
LGCC, LLC et al., Defendants and Respondents.

COUNSEL

O'Reilly, Collins & Danko, Michael S. Danko, Gary L. Simms and Niall G. Yamane for Plaintiff and Appellant.

Bingham McCutchen, John R. Reese, C. William Craycroft, Devan J. McCarty and Amy Talburt for Defendants and Respondents.

OPINION

RUSHING, P. J.—Plaintiff Pietro G. Denevi brought this action against defendants Barry Swenson, Green Valley Corporation (Green Valley), and LGCC, LLC (LGCC),[1] alleging in part that defendants fraudulently induced plaintiff to join them in a venture to develop certain property and to give up, in reliance on their representations, plaintiff's right to purchase that property, after which defendants failed to develop the property but instead caused the loss of plaintiff's former interest. The trial court granted defendants' motion for summary judgment because it concluded that plaintiff, who was a 20 percent owner of LGCC, had made a binding election of remedies by prosecuting to judgment a derivative action on its behalf against Green Valley and Swenson for the same loss. On appeal plaintiff contends that the judgment in the derivative action does not preclude him from pursuing his personal claims against defendants in this action. We initially held that although plaintiff's successful prosecution of the derivative suit did not amount to an election of remedies, it did effectively preclude plaintiff from asserting that defendants had breached any duty owed to him personally. We thereupon granted reconsideration as a matter of right under Government Code section 68081. We now hold that while our prior analysis was correct as to two of plaintiff's causes of action, nothing in this record establishes a bar to his remaining claims. Accordingly, we reverse the judgment with directions

---

[1] " 'A limited liability company is a hybrid business entity formed under the Corporations Code and consisting of at least two "members" [citation] who own membership interests [citation]. The company has a legal existence separate from its members. Its form provides members with limited liability to the same extent enjoyed by corporate shareholders [citation], but permits the members to actively participate in the management and control of the company [citation].' [Citation.]" (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963 [109 Cal.Rptr.2d 436].) Like corporate shareholders, members of a limited liability company hold no direct ownership interest in the company's assets. (Corp. Code, § 17300.)

to summarily adjudicate the two defective causes of action and permit the remaining claims to proceed.

### Background

It is undisputed that at the commencement of the events in question, plaintiff held a contractual right to purchase certain property for a total price of $8 million. The contract called for a down payment of $750,000. Plaintiff entered into an agreement with Green Valley, of which Swenson was the principal, and three other investors, to form a venture to purchase and develop the property. Pursuant to this agreement the parties formed LGCC, to which each of the investors other than plaintiff contributed $100,000, and plaintiff transferred his purchase rights, which included a $400,000 commission or "consulting fee" payable, under his purchase agreement with the seller, upon close of escrow.

LGCC, acting largely through Green Valley, attempted to complete the purchase of the property for a cash down payment of $325,000 cash, while asserting a right to cover the balance with a $400,000 credit for the consulting fee.[2] The seller refused, demanding (among other things) that LGCC pay the entire $725,000 balance on the down payment in cash. LGCC failed to do so, but instead sued the seller. The seller prevailed in that litigation and sold the property to another.

In September 1999, plaintiff filed a complaint, No. CV784721, naming LGCC, Green Valley, and Swenson as defendants. The original complaint explicitly alleged that it was brought on behalf of LGCC, which it named as "Los Gatos Country Club, LLC." It stated a single cause action to the effect that Swenson and Green Valley had breached a fiduciary duty to LGCC by failing to fund escrow, resulting in loss of the property. Plaintiff eventually amended the complaint to plead 11 causes of action, of which nine were personal to plaintiff, one was a restatement of the original derivative claim on behalf of LGCC, and one arguably stated both personal and derivative claims. The trial court sustained a demurrer to all nine personal claims and dismissed LGCC as a defendant from the hybrid cause of action, based on its conclusion that there was "a defect or misjoinder of parties in that the individual claims name [LGCC], as a defendant, yet [LGCC], is the real party in interest in the derivative claims asserted in the Third and Eleventh Causes of Action." As a result of this ruling, the correctness of which is not before us, the complaint in No. CV784721 asserted only derivative claims, i.e., claims

---

[2] The $25,000 difference reflects an earnest money deposit previously paid into escrow.

vested in LGCC but prosecuted on its behalf by plaintiff. We will sometimes refer to that matter as the derivative action.[3]

At some point plaintiff brought the present action, No. CV797389, also against Swenson, Green Valley, and LGCC. Although the original complaint has not been included in either party's appendix, this action eventually became the vehicle for plaintiff's personal claims and will therefore sometimes be referred to as the personal or individual action. As ultimately amended, the complaint essentially duplicated the one in the derivative action except that it omitted the 11th cause of action for derivative liability. The first and second causes of action alleged that Swenson induced plaintiff to transfer his purchase rights to LGCC by fraudulently or negligently promising to obtain adequate funds to purchase and develop the property. The third cause of action alleged that defendants negligently caused the loss of the property in escrow, and the sixth cause of action alleged that they breached fiduciary duties in the same respect. The remaining causes of action alleged breach of a contractual undertaking to obtain and provide adequate funding, breach of covenant in connection with the contract, interference with plaintiff's contractual rights and business prospects vis-à-vis the owner of the property, violation of Business and Professions Code sections 17200 et seq., a common count, and quantum meruit. The prayer sought compensatory damages "in excess of fifty million dollars," punitive damages, and other relief.

The court denied a motion by plaintiff to consolidate the two actions, finding "that there are sufficiently different issues of law and fact and differences relating to the parties such that consolidation may lead to judicial diseconomies. Specifically, plaintiff would be suing on behalf of [LGCC], while at the same time bringing suit against [LGCC]."

The derivative action came on for trial, ultimately yielding a judgment "THAT plaintiff Pietro Denevi, on behalf of [LGCC] real party in interest, shall have judgment for tort damages against defendants Green Valley Corporation, a corporation, and Barry Swenson, individually, in the sum of TEN MILLION ($10,000,000.00) DOLLARS . . . ." Defendants' appeal from that judgment, No. H024089, is pending in this court.

After entry of the foregoing judgment, defendants moved for summary judgment in this action on numerous grounds, including that plaintiff lacked

---

[3] We recently summarized the principles governing derivative actions in *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 183 [133 Cal.Rptr.2d 408]: "Because a corporation is a legal entity separate from its shareholders [citation], when a corporation has suffered an injury to its property the corporation is the party that possesses the right to sue for redress. [Citation.] If a corporation fails to pursue redress of an injury, a shareholder may file a derivative action on behalf of the corporation. The 'derivative' action is so called because the rights of the plaintiff shareholders derive from the primary corporate right to redress the wrongs against it. [Citation.]"

standing to sue in his personal capacity, that he was attempting impermissibly to "[r]escind" the agreement forming the venture "in order to sue a second time in his purported personal capacity," and that the action was precluded by "The Policy Against Double Recovery." The court granted the motion. Plaintiff filed this timely appeal from the ensuing judgment.

## I. *Principles of Review*

█ A moving defendant establishes an entitlement to summary judgment by showing that the action is barred by a " 'complete defense' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], quoting Code Civ. Proc., § 437c, former subd. (o)(2)), or that " 'one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citation.]" (*Aguilar, supra,* 25 Cal.4th at p. 853.)

"Because a summary judgment motion raises only questions of law, we review the supporting and opposing papers independently to determine whether there is a triable issue as to any material fact. [Citations.] In doing so, we apply the same analysis required of the trial court. 'First, we identify the issues framed by the pleadings . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor . . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' [Citation.] Where there is sufficient legal ground to support the granting of the motion, the order will be upheld regardless of the grounds relied upon by the trial court. [Citation.]" (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 859 [84 Cal.Rptr.2d 157].)

We are thus called upon to determine whether, in our independent judgment, defendants negated an element of, or established a complete defense to, each cause of action. We note that defendants moved in the alternative for summary adjudication of each individual cause of action; accordingly it was open to the trial court, and is open to this court, to grant the motion as to some but not all causes of action. (See Code Civ. Proc., § 437c, subd. (f).)

## II. *Election of Remedies*

We first consider whether summary judgment was properly granted on the ground apparently invoked by the trial court, i.e., that plaintiff's successful prosecution of the derivative action constituted a binding election of remedies, precluding any further pursuit of his individual claims. The trial court wrote, "By proceeding to judgment on the 'derivative' claims . . . , plaintiff elected to affirm the . . . operating agreement by which he assigned the option

to purchase the . . . property . . . ." The court noted that plaintiff had failed to raise any issue concerning "this election," and cited authorities concerning the doctrine of election of remedies, i.e., 3 Witkin, California Procedure (4th ed. 1997) Actions, section 181, page 253 (explaining basis of doctrine) and *Evans v. Rancho Royale Hotel Co.* (1952) 114 Cal.App.2d 503, 507 [250 P.2d 283] (applying doctrine; the plaintiff could not recover damages for fraud after rescinding fraudulently procured contract by mutual agreement).

In our previous opinion, we concluded that the doctrine of election of remedies did not bar the action. We stand by that conclusion. In its "conventional form," the doctrine of election of remedies "is stated as follows: Where a person has two concurrent remedies to obtain relief *on the same state of facts*, and *these remedies are inconsistent*, he must choose or elect between them; and if he has clearly elected to proceed on one, he is bound by this election and cannot thereafter pursue the other. 'Election of remedies has been defined to be the right to choose or the act of choosing between different actions or remedies where plaintiff has suffered *one species of wrong* from the act complained of. Broadly speaking, an election of remedies is the choice by a plaintiff to an action of one of two or more coexisting remedial rights, where several such rights arise out of the same facts, but the term has been generally limited to a choice by a party between *inconsistent* remedial rights, the assertion of one being *necessarily repugnant to* or a *repudiation of* the other.' [Citation.]" (3 Witkin, Cal. Procedure, *supra*, § 174, pp. 243–244, italics added.)

■ We question whether plaintiff's personal claims asserted in this action are properly said to arise from the "same state of facts" as the derivative claims asserted in the related action. The trial court's rationale and defendants' arguments assume that this condition is met here, and we originally joined them in that assumption. On reconsideration, however, we are convinced that this is true only as to the third cause of action (negligent loss of property in escrow) and the sixth cause of action (breach of fiduciary duty in allowing loss of property in escrow). As to those claims, summary judgment was properly entered, not because plaintiff had elected a remedy in the derivative action, but because any duty arising in connection with the management of the property in escrow was owed not to plaintiff as an individual, but to the entity, LGCC, on whose behalf plaintiff has already pursued those claims to judgment. Admittedly the judgment in that case is not yet final, and arguably the correct remedy was to abate further proceedings on these causes of action pending such a final judgment, but we can think of no reason to permit them to persist in this action and we will therefore sustain the court's ruling insofar as those claims are concerned.

As to plaintiff's remaining claims, however, no such conclusion can be justified. The gist of the derivative action was *LGCC's* loss of the purchase

rights due to defendants' mismanagement or malfeasance *after that entity was formed*—in particular, the failure to deposit the entire down payment into escrow in cash. Plaintiff's personal claims all arose prior to that time. Most obviously, his claim for fraud rested on the legal injury that he suffered at the moment defendants induced him to part with his purchase rights by, as he alleges, misrepresenting their intentions. The elements of fraud were present at that instant; it remained only for plaintiff to discover them. Had he done so immediately, he could have sued immediately, and would have been entitled at least to rescind the transaction and recover the rights thus conveyed. The subsequent loss of the rights by LGCC may well be *relevant* to plaintiff's personal claims, as we discuss below in connection with the issue of duplicative recovery. (See, *post*, at p. 1223.) However, the loss of the property after it was conveyed to LGCC is neither a necessary nor sufficient part of plaintiff's personal claims. Given this fact, which defendants do not coherently contest, it is doubtful that plaintiff's personal claims can properly be characterized as arising from "the same state of facts" as the derivative claims he pursued to judgment.

More tellingly, however, even if we were satisfied that the claims all arose from the "same state of facts," we do not believe that the remedial rights asserted here in connection with plaintiff's original transfer of the purchase rights to LGCC are inherently inconsistent with, let alone "necessarily repugnant to or a repudiation of" those asserted in the derivative action on LGCC's behalf. The claims are brought on behalf and for the benefit of two distinct juridical persons—plaintiff personally, and LGCC. In the absence of a cogent demonstration to the contrary, we must presume that each claimant was entitled to pursue his or its own remedies, even if the underlying rights to relief arose from a single act or course of conduct on the part of defendants.

There is no rule of law of logic that says a single course of conduct can give rise to only one remedy even when it injures more than one person. Counterexamples are easy to posit. If corporate executive D fraudulently induces P to convey an asset to the corporation, and then through mismanagement causes the corporation to forfeit the asset to a stranger, D is unquestionably liable to P *and* to the corporation. And if P happens to be a shareholder (perhaps because he conveyed the asset in exchange for stock), there is no reason to require him to choose between his personal right of action for fraud and his derivative right to sue on behalf of the corporation for breach of fiduciary duty. That is essentially the present case, and the doctrine of election of remedies has no application to it because there is no inconsistency, let alone repugnancy, between the personal and derivative claims.

The trial court's implicit finding of an inconsistency seems to rest on two suppositions. The first is that the derivative claims amounted to such an

"affirmation" of the agreement to form LGCC that plaintiff could not thereafter take a position implying, however remotely, a basis to disaffirm that transaction. The second is that the fraud claim inherently *dis*affirmed the agreement to form LGCC, and was therefore repugnant to, or amounted to a repudiation of, a transaction plaintiff had already "affirmed."

■ These propositions are themselves repugnant to the well-settled rule that one who is induced by fraud to enter into a contract is entitled *both* to *"affirm"* the contract *and* to sue for damages in tort. To be sure, the law requires one who has been defrauded into entering a contract to choose either to "affirm or rescind" the contract. (5 Witkin, Summary of Cal. Law (9th ed. 1990) Torts, § 725, p. 825.) Rescission consists of restoration by the plaintiff of "any benefits received" under the contract, coupled with restitution to the plaintiff of "the consideration which he gave." (*Ibid.*) In other words, the victim of the fraud may elect to undo the transaction in its entirety, restoring both parties to the status quo ante. However, the victim cannot be *required* to adopt this course; he has the right to *"retain the benefits of the contract . . . ,* and make up in damages the loss suffered by the fraud. Hence, *he may affirm the contract, and simply sue for damages for the fraud."* (*Id.*, § 726, p. 825, italics added.)[4]

Here there has never been any suggestion that plaintiff elected to rescind the contract making him a member of LGCC. Although the present record does not reflect the complete pleading history of both cases, we are aware of no suggestion that plaintiff ever invoked any of the procedures generally reflecting a rescission. (See 3 Witkin, Cal. Procedure, *supra*, § 201, p. 269

---

[4] To be distinguished are cases where the victim forfeits a fraud claim by entering into a new, substitute agreement with, or accepting extracontractual benefits from, the defrauding party, with knowledge of the fraud. (E.g., *Schied v. Bodinson Mfg. Co.* (1947) 79 Cal.App.2d 134, 138 [179 P.2d 380] [trial court found that purchaser of mining equipment, "with full knowledge of the fraudulent representations and of all material facts, waived its right to damages by subsequently agreeing with the seller, in writing, to abide by the contract and to fulfill its terms, and by profiting from the subsequent supplying of certain machinery and repairs at the cost of seller"]; *id.* at p. 140 [judgment for seller affirmed based on buyer's entry into subsequent "modification and renewal" with full knowledge of facts]; *id.* at pp. 142–143, quoting *Burne v. Lee* (1909) 156 Cal. 221, 226 [104 P. 438] [" 'when a party claiming to have been defrauded, enters, after discovery of the fraud, into new arrangements or engagements concerning the subject-matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud' "]; *Schmidt v. Mesmer* (1897) 116 Cal. 267, 270–271 [48 P. 54] ["If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud"], overruled in part in *Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 751 [192 P.2d 935] [tort remedy not waived by victim's mere request for accommodation from defrauding party].)

["The usual procedure is to give *notice of rescission*, together with an *offer to restore* the consideration received (doing equity)"]; Civ. Code, § 1691 [requiring these two steps].) Moreover, the defrauded party does not lose the right to damages merely by *attempting* rescission; he must recover what he gave up in reliance on the fraud. (See *Karapetian v. Carolan* (1948) 83 Cal.App.2d 344, 352 [188 P.2d 809] ["where the defrauded party sends a notice of rescission based upon fraud to the other party, but the fraudulent party has disposed of the property received from the innocent party, and so of course cannot restore the property, the innocent party may maintain an action for damages for the fraud"]; *ibid.*, quoting *Bancroft v. Woodward* (1920) 183 Cal. 99, 101 [190 P. 445] [" 'The right to damages exists unless and until the transaction is effactually disaffirmed' "]; *Mackenzie v. Voelker* (1954) 123 Cal.App.2d 538, 541 [266 P.2d 867] ["a notice of rescission is not irrevocable until everything has been restored to plaintiff with which he parted"].) Here rescission became impossible when the property reverted to the owner, who transferred it to a complete stranger. There has never been any suggestion that the court below, or any court, had the power to undo those transactions and return the property to plaintiff. Accordingly there is, has been, and can be no rescission.

We recognize that plaintiff might yet be put to an election concerning the *measure of damages* to be applied to his claims. (But see *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 646 [49 Cal.Rptr.2d 377, 909 P.2d 981] [a plaintiff pleading fraud in the inducement of a contract "may recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages"].) Assuming some such election may be lurking here, a plaintiff ordinarily cannot be compelled to make it prior to judgment. (*Wallis v. Superior Court* (1984) 160 Cal.App.3d 1109, 1114 [207 Cal.Rptr. 123] ["Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial"].) Indeed, one line of authority declares that an election should not be compelled prior to *satisfaction of judgment*, unless the plaintiff has gained some other benefit that would make it inequitable to permit continued pursuit of an otherwise available remedy. (See *Smith v. Golden Eagle Ins. Co.* (1999) 69 Cal.App.4th 1371, 1375–1376 [82 Cal.Rptr.2d 300], quoting *Southern Christian Leadership Conference v. Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 223 [281 Cal.Rptr. 216].) There is no suggestion of such a benefit here. So far as the record shows, plaintiff has obtained nothing for his efforts except an uncollected judgment on behalf of an entity of which he was a one-fifth owner.

■ Nor does the law of business associations interpose any obstacle to plaintiff's pursuit of individual claims. Rather it is settled that one who has suffered injury both as an owner of a corporate entity and in an individual capacity is entitled to pursue remedies in both capacities. The leading case is *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93 [81 Cal.Rptr. 592, 460

P.2d 464], where the court reversed a judgment on demurrer as to a class action by minority shareholders against a majority shareholder for breach of fiduciary duty. The complaint alleged that the majority shareholder had created a public market for his stock but would only permit the minority shareholders to participate by selling their stock at less than its market value. When that offer was refused, he caused the entity to declare that it would no longer pay dividends on its outstanding shares, thereby rendering the minority shares worthless. The trial court reasoned that the minority shareholders could not maintain an action in their individual capacities because the facts alleged stated only a derivative cause of action. The Supreme Court reversed, noting that a single course of action by a majority shareholder might give rise to derivative claims, individual claims, *or both*. The claims are derivative where the injury alleged is one inflicted on the corporate entity or on the "whole body of its stock." (*Id.* at p. 106.) A personal claim, in contrast, asserts a right against the corporation which the shareholder possesses as an individual apart from the corporate entity: "If the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Id.* at p. 107.)

Here there is no doubt that plaintiff alleged both derivative and individual claims. The primary individual claim is that defendants Swenson and Green Valley defrauded him into transferring his purchase rights to LGCC. This injury is in no sense derivative of his status as an owner-member of the resulting entity. His claim for fraud is thus entirely personal, and indeed unique, to him. Moreover it is temporally distinct from the derivative claims. The fraud was complete the moment plaintiff detrimentally relied on defendants' representations by transferring his purchase rights to LGCC. The derivative claims could only arise *after* LGCC was formed and suffered injury from the alleged breaches of fiduciary duty by Swenson and Green Valley.

## III. *Other Grounds*

The trial court's order and defendants' various arguments suggest other possible grounds for affirming the judgment in defendants' favor. Thus the court wrote that permitting plaintiff to now pursue his personal claims would "substantially prejudice[]" defendants "in that they would again be compelled to defend against the same claims that were raised and adjudicated in the derivative action." This point is already answered by our conclusion that these two suits do not assert "the same claims." We also note that any harm flowing from their successive prosecution is attributable directly to defendants, who successfully resisted plaintiff's repeated efforts to present all claims in a single proceeding. Defendants cannot now be heard to insist that plaintiff be barred from the courthouse to shield them from the natural consequences of their own litigation strategy.

Defendants contend that they are not responsible for plaintiff's maintenance of two separate suits because (1) plaintiff "has *no valid personal claim at all*," and (2) "one cannot both sue an LLC personally and sue on its behalf derivatively on the same claims at the same time." The first proposition has simply not been demonstrated. Nor has any authority been cited for the second, but accepting it as true, we again note that except for the two causes of action whose dismissal we have sustained, the present action does not involve "the same claims" as plaintiff pursued in the derivative action. The most that can be said is that the claims may be *interrelated* to an extent that *justifies* an order for their separate prosecution. The fact remains that the orders necessitating separate actions were only made at defendants' instance, and therefore cannot furnish a basis to hold *plaintiff* estopped to pursue such actions.

Defendants also attempt to sustain the judgment by arguing that "any claim for the loss of the property belongs solely to the LLC." No convincing rationale is offered for this assertion. It is true that a claim for *LGCC's* loss can only be asserted by or on behalf of LGCC. Therefore, as we have said, plaintiff's claims were properly dismissed insofar as he sought to recover in this action for losses sustained by LGCC. Again, however, he has an entirely personal right to recover what *he* lost when he conveyed his purchase rights *to* LGCC in detrimental reliance, as he claims, on defendants' fraud. His acquisition of an ownership interest in LGCC does not magically erase the harm that he suffered, and cannot categorically bar his personal claim for damages for that harm.

Defendants also allude to the possibility that pursuit of this action will result in a "double recovery" for plaintiff. We acknowledge the potential for overlapping or duplicative awards, but we see no basis to hold that this justifies the categorical preclusion of plaintiff's individual claims. First we repeat that where a defendant commits torts against two distinct persons, he is presumptively liable to each of them for the full amount of that plaintiff's losses, even if both torts involve the same subject matter. A man who falsely promises to sell a bridge he does not own to each of two (or a dozen) purchasers is liable to make each of them whole, notwithstanding that he may feel he is paying repeatedly for the "same claim."

This basic principle is moderated here only because, as an owner of LGCC, plaintiff presumably stands to benefit from any value LGCC actually receives as a result of the derivative action. That benefit in turn may operate to reduce his damages on at least some of his personal claims. Most notably, insofar he seeks out-of-pocket losses in this action, his damages will consist of the difference between the value he gave up in reliance on the fraud, and the value he received as a result of it. Any flow of capital to LGCC, or any

gain in value in plaintiff's holdings, should logically operate to increase the "value received" element in this calculus, thereby reducing the difference and his ultimate recovery for fraud. As this point illustrates, however, no duplicative recovery can be said to occur unless or until plaintiff actually receives something of value, as an owner of LGCC, by virtue of the derivative action. In any event such proof goes to the element of damages, not liability. By no known logic can it justify a complete bar against plaintiff's pursuit of his individual claims.

### DISPOSITION

The judgment is reversed with instructions to summarily adjudicate the third and sixth causes of action in defendants' favor and to permit plaintiff to prosecute the remaining causes of action. Each side will bear its own costs on appeal.

Premo, J., and Elia, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 15, 2004.