Filed 6/10/22  Maude v. Superior Court CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEVIN MAUDE et al., | |
| Petitioners, | |
| v. | G060796 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 30-2021-01195194) |
| Respondent; | O P I N I O N |
| ROGER HICKEY et al., | |
| Real Parties in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Robert James Moss, Judge.  Petition granted.

Nolan Heimann, Jordan Susman and Margo Arnold for Petitioners.

Stradling Yocca Carson & Rauth and Stephen L. Ram for Real Parties in Interest.

No appearance for Respondent.

\*          \*          \*

Petitioners Kevin Maude and Matt Piercey (plaintiffs) are investors in nominal defendant Freshpark Industries LLC (Freshpark). They filed this lawsuit asserting direct claims and derivative claims on behalf of Freshpark against Real Parties in Interest Roger Hickey, Esther Hickey, Trailer-Tug LLC, and Germ Scan, Inc. (defendants).[1] Their claims are primarily based on allegations that the Hickeys, who controlled Freshpark, engaged in self-dealing. Defendants filed a demurrer in response, which was partially sustained without leave to amend. Of relevance here, the court dismissed several direct claims without leave to amend, finding they were based on derivative harms and could not be brought by plaintiffs directly. Plaintiffs filed this petition, requesting a writ of mandate directing the trial court to enter an order either overruling the demurrer to these claims or sustaining it with leave to amend. We agree with the latter contention. Because the court erred in denying plaintiffs the chance to amend the direct claims at issue, we grant the petition.

I

FACTS AND PROCEDURAL HISTORY

Freshpark makes portable skateboard and dirt bike equipment. It was established by Roger in February 2009. During the relevant period, Roger and his wife, Esther, were the company's sole board members, held all the officer positions, and exercised complete control over the company.

Plaintiffs are investors in Freshpark. Maude invested $300,000 in May 2009 in exchange for a 20 percent ownership interest, and Piercey invested $250,000 in August 2011 in exchange for a 10 percent ownership interest. In their complaint, plaintiffs allege the Hickeys knowingly mismanaged Freshpark and engaged in numerous forms of self-dealing. Among other things, they contend the Hickeys caused Freshpark

---

[1] We refer to defendants Roger Hickey and Esther Hickey individually by their first names since they share a surname, and we refer to them collectively as the Hickeys.

2

to (1) file inaccurate tax documents; (2) provide plaintiffs with K-1 statements that showed distributions to plaintiffs that were never made; (3) make nearly $1 million in distributions to the Hickeys; (4) enter into sweetheart deals with defendants Trailer-Tug LLC and Germ Scan, Inc., alleged alter egos of the Hickeys; (5) purchase or lease equipment for the Hickey's personal interests or to advance other business interests; (6) allow other Hickey-owned entities to use Freshpark's real and personal property without charge; (7) funnel money and gifts to the Hickeys' friends and family; and (8) expend company funds to purchase a one percent interest back from Maude in 2011.

Based on these allegations, plaintiffs alleged numerous direct and derivative claims against the various defendants. The derivative claims were for (1) breach of fiduciary duty based on self-dealing, (2) breach of fiduciary duty based on lack of good faith, (3) breach of fiduciary duty based on lack of duty of care, (4) corporate waste, (5) conspiracy to breach fiduciary duty, (6) aiding and abetting breach of fiduciary duty, (7) conversion, and (8) accounting. The direct claims included, (9) breach of fiduciary duty based on self-dealing, (10) breach of fiduciary based on lack of good faith, (11) breach of fiduciary duty based on lack of duty of care, (12) conspiracy to breach fiduciary duty, (13) aiding and abetting breach of fiduciary duty, (14) fraud, (15) conversion, and (16) accounting.[2]

Defendants filed a demurrer in response. Among other things, the demurrer sought dismissal of the ninth through thirteenth, fifteenth, and sixteenth causes of actions (the challenged direct claims) on grounds they were based on derivative harms and could not be brought directly. The trial court agreed. Citing authority stating derivative and direct claims are mutually exclusive, it sustained the demurrer to the challenged direct claims without leave to amend. It reasoned, "in certain circumstances, a minority

_____

[2] Plaintiffs also asserted direct claims for (17) breach of contract, (18) violation of Corporations Code section 17704.10, and (19) fraud in the inducement. These claims are not material to this petition.

shareholder may sue for a breach of fiduciary duty (or other wrong) via a derivative or a direct action, but [plaintiffs] may not do what they are attempting to do here and sue for both. They have to pick one or the other." The court dismissed the direct claims (over the derivative claims) because "it looked like all the damages [alleged in the complaint] would go to [Freshpark]."

Plaintiffs then filed a petition for a writ of mandate directing the trial court to vacate the above order and enter a new order either overruling the demurrer as to the challenged direct claims or sustaining it as to those claims but with leave to amend. After reviewing informal briefs from the parties, we issued an order to show cause as to why the relief should not be granted. Defendants then filed a return to the petition and plaintiffs filed a formal reply.

II

DISCUSSION

Plaintiffs generally assert the trial court erred in finding they had to pick between direct and derivative claims. Rather, they contend both types of claims can be plead in the same complaint. The specifics of their argument, though, shifted between their petition and formal reply. The primary error alleged in the petition was the court's decision to sustain the demurrer. Defendants' return then argued that ruling was correct because the derivative and challenged direct claims were based on the same allegations, which only showed injuries to Freshpark. Plaintiffs' formal reply appears to concede this issue and refocuses plaintiffs' argument around the court's denial of leave to amend. For example, it states, "the problem with the Respondent Court's ruling was not that it sustained the demurrer, but that it sustained the demurrer without leave to amend." Likewise, the formal reply makes no argument concerning the portion of the ruling sustaining the demurrer. Rather, it solely addresses the court's denial of leave to amend.

4

As such, our analysis focuses on the leave to amend issue. As explained below, we find the court erred by denying plaintiffs the chance to amend.

We review the trial court's denial of leave to amend for an abuse of discretion. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497-1498.) Significantly, plaintiffs were denied leave to amend their *initial* complaint. "Only rarely should a demurrer to an initial complaint be sustained without leave to amend. [Citation.] The denial of leave to amend is appropriate only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained." (*Cabral v. Soares* (2007) 157 Cal.App.4th 1234, 1240-1241 (*Cabral*).) "[F]or an original complaint, regardless [of] whether the plaintiff has requested leave to amend, it has long been the rule that a trial court's denial of leave to amend constitutes an abuse of discretion unless the complaint 'shows on its face that it is incapable of amendment.'" (*Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411 (*Eghtesad*).)

The trial court did not provide its reasoning for denying leave to amend. But it appears to be based on the court's conclusion that the challenged direct claims were based on the same wrongful conduct as the derivative claims. Ostensibly, based on this finding, the court believed the challenged direct claims were inherently derivative and that plaintiffs could not allege any new facts to allow them to be brought directly.

Our analysis starts with an overview of derivative and direct causes of action.[3] Derivative claims arise from the fundamental principal that "a corporation is a legal entity that is distinct from its shareholders." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) "Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. The shareholders may, however, bring a derivative suit to enforce the corporation's rights and

---

[3] "'[T]he principles of derivative lawsuits applicable to corporations likewise apply to . . . limited liability compan[ies] . . . .'" (*Sprengel v. Zbylut* (2019) 40 Cal.App.5th 1028, 1040.)

5

redress its injuries when the board of directors fails or refuses to do so." (*Ibid*.) Put differently, "a derivative suit is one in which the shareholder seeks 'redress of the wrong to the corporation.'" (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 793.) "A personal claim, in contrast, asserts a right against the corporation which the shareholder possesses as an individual apart from the corporate entity: 'If the injury is not incidental to an injury to the corporation, an individual cause of action exists.'" (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1221-1222 (*Denevi*).)

"'In determining whether an individual action as opposed to a derivative action lies, a court looks at "the gravamen of the wrong alleged in the pleadings."'" (*Holistic Supplements, L.L.C. v. Stark* (2021) 61 Cal.App.5th 530, 542.) "An action is deemed derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets."'" (*Grosset v. Wenaas*, *supra*, 42 Cal.4th at p. 1108.) Conversely, a direct action seeks ""'to enforce a right against the corporation which the stockholder possesses as an individual.'" [Citations.] For example, "'[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action."'" (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 150.)

In finding that plaintiffs had to pick between direct and derivative claims, the trial court relied on case law stating such "'actions are mutually exclusive: i.e., the right of action and recovery belongs to either the *shareholders* (direct action) or the *corporation* (derivative action).'" (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 650-651.) In other words, a plaintiff cannot pursue the same remedy for the same injury both individually and derivatively. Still, the same course of conduct may cause separate injuries to both the individual shareholder and the

6

corporation. (*Denevi*, *supra*, 121 Cal.App.4th at pp. 1221-1222; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124.) "[O]ne who has suffered injury both as an owner of a corporate entity and in an individual capacity is entitled to pursue remedies in both capacities."[4] (*Denevi*, at pp. 1221-1222.)

Plaintiffs argue the trial court mistakenly believed direct and derivative claims cannot be alleged in the same complaint and, on this erroneous basis, improperly sustained the demurrer to the challenged direct claims without leave to amend. But their argument misinterprets the court's ruling, which appears to have been far more limited. Based on its comments at oral argument, the court found the gravamen of the challenged direct claims was harm to Freshpark, and, therefore, they could only be brought derivatively on Freshpark's behalf, not as direct claims. As set forth above, plaintiffs appear to concede this narrower point, which is consistent with applicable law. (*Schrage v. Schrage*, *supra*, 69 Cal.App.5th at p. 149 [individual shareholders may not recover for harms to the corporation].)

However, we agree with plaintiffs that this finding was insufficient to justify denial of leave to amend. Even if the allegations in the complaint only showed harms to Freshpark, it was premature to conclude that plaintiffs could not allege any facts showing individual injuries that could support direct claims. "[A] single course of action by a majority shareholder might give rise to derivative claims, individual claims, *or both*." (*Denevi*, *supra*, 121 Cal.App.4th at pp. 1221-1222.) For example, majority shareholders owe fiduciary duties to minority shareholders. They "may not use their

---

[4] Where only derivative claims are alleged, courts have sustained demurrers to direct claims without leave to amend. (See, e.g., *Bader v. Anderson*, *supra*, 179 Cal.App.4th at pp. 784-786, 799-802 [sustaining demurrer to fourth amended complaint]; *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 309, 311-315, 318 [sustaining demurrer to second amended complaint].) This petition does not require us to determine whether a complaint that pleads direct and derivative claims as alternative theories of recovery for the same injury can survive demurrer, and we express no opinion on the matter.

7

power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108.) "[I]f a minority stockholder [brings] suit against the majority stockholders for breach of fiduciary duty, 'an individual cause of action exists' because the injury was 'not incidental to an injury to the corporation.'" (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964.)

Here, there is a possibility plaintiffs can allege facts showing individual harms that could save the challenged direct claims. The complaint suggests the Hickeys may have caused Freshpark to unlawfully withhold distributions from plaintiffs, which could potentially support some or all of the challenged direct claims. (See *Schuster v. Gardner*, *supra*, 127 Cal.App.4th at p. 313 ["Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends"].) While plaintiffs may ultimately be unable to plead the challenged direct claims as viable causes of action, they should have been given a chance to try.

In response, defendants contend plaintiffs failed to offer the trial court any potential allegations that could cure the deficiencies in the challenged direct claims. But since the demurrer involved plaintiffs' initial complaint, denial of leave to amend was improper unless the complaint conclusively showed the claims at issue were incapable of amendment. (*Eghtesad*, *supra*, 51 Cal.App.5th at p. 411; *Cabral*, *supra*, 157 Cal.App.4th at pp. 1240-1241.) It did not. Besides, given the circumstances, plaintiffs were not given a reasonable opportunity to describe potential amendments to the court. The primary focus at oral argument was whether plaintiffs had to pick between derivative and direct claims. Plaintiffs argued they had sufficiently alleged both individual and derivative

8

harms, and they requested leave to amend if the court did not agree. The court failed to inquire as to what allegations could be added to save the challenged direct claims. In doing so, it abused its discretion by failing to consider whether there was any possibility that plaintiffs could successfully amend these claims. (*Eghtesad*, at p. 411; *Cabral*, at pp. 1240-1241.)

III

DISPOSITION

Plaintiffs' petition is granted. Let a writ of mandate issue directing the superior court to (1) vacate the portion of its September 3, 2021 order sustaining defendants' demurrer to the ninth, tenth, eleventh, twelfth, thirteenth, fifteenth, and sixteenth causes of action without leave to amend; and (2) enter a new order sustaining defendants' demurrer to these causes of action with leave to amend. In the interest of justice, costs are deferred at this time. In determining costs to be awarded to the prevailing party, the trial court shall consider the costs incurred by the plaintiffs in connection with this writ proceeding. (Cal. Rules of Court, rule 8.493.)

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.

9