Filed 10/1/25  Hameed v. Syed CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RASHID HAMEED ET AL., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> KALEEM SYED, <br><br> Defendant and Appellant. | 2d Civil No. B330981 <br> (Super. Ct. No. 56-2020-00540991-CU-PN-VTA) <br> (Ventura County) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br> (No Change in Judgment) |

THE COURT:

It is ordered that the opinion filed herein on September 4, 2025, be modified as follows:

The paragraph commencing at the bottom of page 7 with "A shareholder's derivative suit . . .", the last sentence is modified to read as follows:

> We look to Hameed's and Singh's complaint against Syed to determine if the gravamen of their cause of action is injury to the corporation or to themselves individually. (*Jones*, at p. 107.)

There is no change in judgment

Appellant's Petition for Rehearing is denied.


YEGAN, Acting P. J.        BALTODANO,  J.        CODY, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| RASHID HAMEED ET AL., | 2d Civil No. B330981 |
| Plaintiffs and Respondents, | (Super. Ct. No. 56-2020-00540991-CU-PN-VTA) |
| v. | (Ventura County) |
| KALEEM SYED, | |
| Defendant and Appellant. | |

Appellant Kaleem Syed and respondents Rashid Hameed and Gurmit Singh bought four Alaska Burger King restaurants in 2018.  They formed an Alaskan corporation, respondent HS&S Restaurants, Inc., and agreed Syed would manage the day-to-day activities of the company because of his prior experience in the industry.  The relationship quickly deteriorated.  Hameed and Singh questioned Syed's handling of the finances; Syed grew frustrated with his partners' reluctance to invest in renovations he believed would drive profits.  Their dispute elicited an ultimatum from Burger King's corporate office:  sell the restaurants immediately or we will terminate your franchise

agreement.  The parties lost much of their investment in the resulting "fire sale."

The parties filed cross-claims for breach of fiduciary duty and other causes of action.  The trial court found in favor of respondents after a bench trial.  It awarded Hameed and Singh $210,000 each in compensatory damages plus $20,000 each in punitive damages for Syed's breach of fiduciary duty.  It awarded them nominal damages on their claims for intentional and negligent misrepresentation.  The court awarded the corporation $121,000 against Syed.  On appeal, Syed contends, among other things, the individual respondents lacked standing to "pursue damages that were incurred by HS&S directly."  We will affirm.

FACTUAL AND PROCEDURAL HISTORY

*Alaska Burger King Venture*

Syed learned of an opportunity to buy four Alaska Burger King restaurants in 2016.  He operated fast-food franchises in the past and believed the restaurants would be a good investment.  Hameed and Singh agreed to help buy them.  Syed retained his son Habeeb to act as their corporate attorney.  They negotiated a purchase price of $1.5 million.  Escrow closed in late 2018 after Burger King Corporation (BKC) approved their newly formed corporation, HS&S Restaurants, Inc. (HS&S), as the new Alaska franchisee.  A separate agreement with BKC required them to begin remodeling one of the four restaurants.  Hameed, Singh, and Syed planned to invest $400,000 each but ultimately each contributed over $600,000 because they could not obtain a loan to cover the remaining acquisition and startup costs.

HS&S's franchise agreement required a pre-approved "managing owner" to run the restaurants' day-to-day operations.  Syed filled this role from his home in California.  Hameed and Singh agreed he would receive a monthly salary and 40 percent of

the HS&S's shares.  Hameed and Singh each received 30 percent. All three received promissory notes from HS&S for $420,000 and treated the balance of their cash investments as unsecured capital contributions.

*Disputes Arise Over HS&S's Finances*
*And Remodeling Obligations*

Problems arose immediately.  Syed complained his salary was inadequate for the work needed to run the restaurants. Hameed and Singh felt that Syed lacked transparency about HS&S's finances.  They also disagreed about whether to join a BKC program that offered cash incentives if they remodeled all four locations instead of just one.  Syed believed renovating the restaurants would drive business.  Hameed and Singh believed the upfront costs of remodeling—which Singh estimated at $800,000 to $900,000 per location—would bankrupt HS&S.  Syed signed the program agreement over their objection.  Hameed and Singh signed several months later after Syed told them they would "lose everything" if they did not.

Syed told Hameed and Singh in September of 2019 that HS&S's bank account was overdrawn.  After depositing money to pay bills, Hameed and Singh agreed to stop taking payments on their promissory notes if Syed lowered his monthly salary from $8,000 to $6,000.  Syed disclosed in January of 2020 that he had instead *increased* his salary to $12,500.  Hameed and Singh promptly removed Syed from HS&S's bank accounts.  They voted as majority shareholders to retain Syed in his operational role but to restrict his control over the corporation's finances.  They prepared amended bylaws to this effect.  Syed responded by cancelling daily cash pickups from the restaurants by armored car.  He also directed credit card companies not to deposit funds into HS&S's corporate accounts.  Hameed and Singh obtained an

3

ex parte restraining order directing Syed to turn over control of HS&S's finances to them.

*HS&S Sells Its Restaurants After BKC Threatens*
*to Terminate Their Franchise Agreement*

Syed told BKC that his partners were thwarting his ability to serve as managing owner. BKC issued a "notice of operational default" in March of 2020 when it discovered HS&S was not paying vendors and remodeling contractors. It directed HS&S to reinstate Syed as managing owner or to appoint a new one "in accordance with BKC's standard procedures." BKC rejected Hameed's application to replace Syed in this role. It issued a second notice of default in April of 2020 warning it would terminate HS&S's franchise agreement if certain operational issues were not cured within 30 days. This included among, other things, improving performance metrics and "demonstrat[ing] a plan to fulfil[l] its obligation to remodel" its restaurants.

BKC agreed to refrain from terminating the franchise agreement if Hameed, Singh, and Syed could find an acceptable buyer. Three prospective buyers lowered their initial offers after they learned about the remodeling obligations attached to the franchises. BKC later exercised its contractual right of first refusal and bought all four restaurants for $850,000.

*Shareholder Litigation*

Hameed and Singh sued Syed. They originally framed their case as a shareholder derivative action against Syed. Syed demurred on various grounds, one being Hameed and Singh could not comply with Corporations Code section 800[1] because

---

[1] Corporations Code section 800, subdivision (b)(2) requires a shareholder derivative complaint to allege "efforts to secure

4

they collectively owned a majority of HS&S's shares.  The trial court sustained the demurrer with leave to amend to "revis[e] the complaint to allege a direct corporate action rather than a derivative action."  Hameed and Singh then filed a complaint including causes of action for intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty.  HS&S filed a complaint against Syed for breach of fiduciary duty, negligence, conversion, and unjust enrichment.  Syed filed his own action for corporate dissolution, breach of contract, breach of fiduciary duty, and declaratory relief.[2]  The trial court consolidated the cases and converted Syed's complaint to a cross-complaint.

## Trial

A bench trial took place over several days in November of 2022.  The parties waived their rights to a court reporter.  Hameed, Singh, and Syed's son Habeeb testified.  Syed did not.  The court also heard testimony from, among others:  the accountant who prepared HS&S's taxes; an attorney who represented HS&S during the sale of its restaurants; two experts who opined on franchise issues; and a man who invested in a prior Burger King venture run by Syed that failed.  The parties submitted closing arguments in writing.

---

from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file."

[2] *Syed v. Hameed* (Super. Ct. Ventura County, 2020, No. 56-2020-00543981-CU-MC-VTA).

On Hameed and Singh's claims, the trial court found Syed made several intentional and negligent misrepresentations but awarded only nominal damages because there was insufficient evidence to "reasonably trace and calculate" the loss. The court also found Syed had breached his fiduciary duty owed to Hameed and Singh as a result of numerous instances of misconduct. The court noted that Syed did not dispute that he owed fiduciary duties or that the conduct described, if proved, would constitute a breach of duty. The court awarded damages because Syed's "breaches created a toxic environment and caused a complete breakdown among the corporate officers, directors and shareholders necessitating a rushed sale of the franchise." The court found the damages suffered were not "readily ascertainable" and thus it could not calculate the amount with absolute certainty. It instead relied upon evidence demonstrating the sale price of the franchise was reduced because of Syed's misconduct. It calculated the damages by assigning 50 percent of franchise value loss, or $700,000, to Syed's conduct. The court then awarded Hameed and Singh each $210,000, or 30 percent of $700,000, based on their 30 percent interest in the company's stock, plus punitive damages of $20,000 each.

The court also found in favor of HS&S on its breach of fiduciary duty claim and awarded economic damages of $120,000 "for the amount of unauthorized payroll" the company paid Syed. It found against Syed on all his claims against Hameed and Singh.

The court later adopted these findings and entered judgment. It denied Syed's motion for new trial. Syed noticed his intent to appeal and elected to use a settled statement in lieu of a reporter's transcript. (Cal. Rules of Court, rule 8.137.) His

6

proposed statements and summaries of testimony were "repeatedly rejected by the Court because they [did] not accurately summarize the evidence, the objections or the events that occurred during the trial." The court then issued a final summary of testimony and proceedings "based on its [own] recollection and notes from the trial" which was incorporated into the settled statement.

## DISCUSSION

*Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; see *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613 [substantial evidence standard of review applies to express and implied findings of fact in a statement of decision].)

*Respondents' Standing to Pursue Individual*
*Breach of Fiduciary Duty Claims*

Syed contends Hameed and Singh lacked standing to pursue "claims that corporate assets were sold for less than they were worth" because these damages were incurred by HS&S directly. The appropriate remedy for them to pursue, he argues, was a derivative action brought on behalf of the corporation. We disagree.

"A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders

7

when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act." (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 (*Jones*).) "'The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.' [Citation.]" (*Id.* at p. 107; see *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 311-312 [shareholders lacked standing to bring direct action against corporation's directors and officers where alleged injury, i.e., loss of stock value, was incidental to corporation's injury].) We look to Hameed's and Singh's complaint against Syed to determine if the gravamen of their breach of contract claim is injury to the corporation or to themselves individually. (*Jones*, at p. 107.)

While the complaint generally alleges that Syed's mismanagement reduced the value of HS&S's assets—harm borne by all shareholders—it also alleges Syed breached his fiduciary duty by acting in ways that harmed Hameed and Singh individually. This includes, among other things: misrepresenting that he invested an equal amount of money into HS&S as them; depositing their investment funds into his personal account instead of a company account; inducing them to invest more in HS&S by promising them greater monthly payouts, then refusing to do so; inducing them to personally cover payroll expenses by falsely stating HS&S did not have sufficient funds; and pressuring them to personally guarantee a remodeling loan on threat of diluting their shares. "[W]here a defendant commits torts against two distinct persons, he is presumptively liable to each of them for the full amount of that plaintiff's losses, even if both torts involve the same subject matter." (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1223 (*Denevi*); see *Jones, supra,* 1 Cal.3d at p. 106 [single course of action by a

8

majority shareholder might give rise to derivative claims, individual claims, or both].)

The reduced value of the restaurants constitutes a significant amount of the damages sought by respondents—but not all. This distinguishes Hameed's and Singh's action from those in which a shareholder's individual claims are coextensive with the corporation's. (See, e.g., *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 125 ["Because all of the acts alleged to have caused Nelson's injury amount to alleged misfeasance or negligence in managing the corporation's business, causing the business to be a total failure, any obligations so violated were duties owed directly and immediately to the corporation"].) "If corporate executive D fraudulently induces P to convey an asset to the corporation, and then through mismanagement causes the corporation to forfeit the asset to a stranger, D is unquestionably liable to P and to the corporation. And if P happens to be a shareholder (perhaps because he conveyed the asset in exchange for stock), there is no reason to require him to choose between his personal right of action for fraud and his derivative right to sue on behalf of the corporation for breach of fiduciary duty." (*Denevi*, *supra*, 121 Cal.App.4th at p. 1219, italics omitted.)

Seeking damages that overlapped with HS&S's companion action did not divest Hameed and Singh of standing to pursue direct claims against Syed. (See *Denevi*, *supra,* 121 Cal.App.4th at p. 1221 [possibility of overlapping or duplicative awards does not preclude plaintiff's individual claims].) The court recognized that although Hameed and Singh were entitled to damages, the damages they suffered were not readily ascertainable. "'The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. [Citation.] This is especially

9

true where . . . it is the wrongful acts of the defendant . . . that have caused the other party to not realize a profit to which that party is entitled.'" (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 397.) As a result, it decided to calculate damages based upon the loss in value of the franchise due to the "rushed sale." Syed's cross-complaint, we note, also included direct claims against Hameed and Singh for breach of fiduciary duty based on allegations they "jeopardize[d] the viability of the HS&S franchises" and precipitated a "fire sale" of those assets.

Moreover, the trial court structured the award to avoid any windfall to respondents. After concluding Syed breached fiduciary duties to HS&S, it found "many of those breaches are either not traceable to any damages or *are traceable to damages that have already been awarded to Hameed and Singh individually*." (Italics added.) It then limited the company's damages to amounts Syed received above his approved salary "and other unauthorized monies" paid to him by HS&S.

*Business Judgment Rule*

Syed describes "the fulcrum of the damages award" as his decision to commit HS&S to BKC's remodeling program. He contends the trial court erred when it failed to apply the business judgment rule, which insulates directors and officers from liability "for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interests of the corporation, where no conflict of interest exists." (*Gaillard v. Natomas Co.* (1989) 208 Cal.App.3d 1250, 1263; see *Brooks v. Horner* (Alaska 2015) 344 P.3d 294, 297[3].)

---

[3] Syed cites the law of Alaska, not California, as controlling because HS&S was incorporated in that state until February of

Syed raised this affirmative defense in his opening and closing trial briefs but did not testify on the subject (or any subject) at trial. He also oversimplifies the trial court's reasoning. The statement of decision explained as follows before awarding damages to Hameed and Singh for breach of fiduciary duty: "The Court finds that K. Syed is 50% responsible for the remodeling commitment, the rushed sale and any losses resulting therefrom. K. Syed engaged in a course of conduct during which he ignored basic corporate protocols, failed to carefully, accurately and transparently account for investments and corporate funds, made decisions and commitments without regard to the concerns of the other shareholders, attempted to strong-arm their compliance with his wishes, and engaged in retaliatory tactics when Hameed and Singh attempted to insist on basic corporate compliance and transparency in the financials, among other things." The court also found Syed's "malicious and reckless" conduct supported an award of punitive damages. Responding to Syed's request for indemnification, the court determined he had not shown he acted in good faith and or that he reasonably believed his conduct "to be in or not opposed to the best interests of the corporation." These findings are supported by substantial evidence.

*Business Valuation Testimony*

Syed contends the trial court erred when it calculated damages based on purchase offers received by Hameed while marketing the restaurants for sale. He describes the award as based on "'junk science' back-of-the-envelope calculations" and

2020. The business judgment rule is applied similarly in both states. We would reach the same result under either state's law.

11

argues the issue required the testimony of a business valuation expert. We disagree for two reasons.

First, Syed proposed the same "back-of-the envelope" method of calculating damages for his own claims against Hameed and Singh. His opening trial brief stated: "HS&S received two different valuations related to the sale of the franchises, which were valued at 2.2 million, then later lowered to 1.8 million." He sought "[l]oss related to sale price of HS&S due to default caused by Hameed and Singh by unilateral change in Bylaws and filing herein lawsuit prior to sale. 2.2 million - $850,000=1,350,00 v 40% shares=$540,000." The trial court placed a slightly higher value on the restaurants—$2.25 million—but otherwise used the same formula in its statement of decision. It then halved Hameed's and Singh's damages to adjust for their own missteps.

Second, the trial court based the award on Hameed's testimony about potential buyers who later retracted or lowered their offers after learning about the remodeling commitment they would need to assume upon purchase. Calculating the difference between their initial and revised offers did not require the court to perform market analysis, cash flow projections, or other functions requiring expert testimony—just arithmetic using figures gleaned from Hameed's testimony about the offers HS&S received for the restaurants. "'Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. [Citations.] The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. [Citation.] This is especially true where . . . it is the wrongful acts of the defendant that have created the difficulty in proving the amount of loss of profits [citation] or

12

where it is the wrongful acts of the defendant that have caused the other party to not realize a profit to which that party is entitled.' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774-775.)

Syed also contends the court should have excluded Hameed's testimony as hearsay. The settled statement does not indicate whether he raised this objection at trial. Syed's motion for new trial argued the court erred when it admitted *an exhibit* prepared by Hameed summarizing the offers and used the document to calculate damages. The minute order denying the motion states this exhibit "was not admitted, but Mr. Hameed testified fully to its contents and no transcript has been provided suggesting that an objection was raised to such testimony." The absence of a reporter's transcript on appeal creates the same problem for Syed. The argument is waived. (Evid. Code, § 353.)

*Superseding Cause of Harm*

Syed contends the trial court erred in allocating fault among the parties because Hameed's and Singh's acts were a superseding cause of their losses, i.e., the diminished value of the restaurants. These acts included: (1) Hameed and Singh's ratifying the remodeling agreement despite their objections; and (2) their amending HS&S's bylaws, which Syed argues caused BKC to issue notices of default. We are not persuaded.

The defense of superseding cause "absolves a tortfeasor, even though his conduct was a substantial contributing factor, when an independent event intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573, fn. 9, italics omitted.) The trial court found Syed breached his fiduciary duties to Hameed and Singh.

13

It reduced Hameed's and Singh's damages after finding they were partially responsible "for the remodeling commitment, the rushed sale and any losses resulting therefrom." The trial court, however, did not find they acted negligently or breached any fiduciary duty to Syed when they signed the remodeling agreement or took over the business. It ruled against Syed on all cross-claims against them.

Syed's description of their acts as "independent event[s] . . . producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen" views the record too narrowly. As discussed above, the statement of decision made detailed factual findings about what caused the "fire sale" of HS&S's restaurants. Hameed's and Singh's decisions to sign the remodeling agreement and to assert control over the business were made in response to Syed's many breaches of fiduciary duty, which "created a toxic environment and caused a complete breakdown among the corporate officers, directors and shareholders." Substantial evidence supported these findings.

*Salary Overpayment Damages to HS&S*

The trial court found Syed "paid himself an unauthorized salary" and "monies outside of his salary." It also found he "failed to keep a proper accounting of the books and record of the corporation . . . ." Syed contends the court's award of $120,000 in damages to HS&S for these payments is not supported by substantial evidence. We again disagree.

Hameed testified the shareholders initially agreed to pay Syed a monthly salary of $5,000 for his work as managing owner. They raised this to $6,000 in January of 2019 and to $8,000 in February of 2019. They reduced it to $6,000 in September of 2019, and, at the same time, agreed to stop taking payments on their promissory notes. Singh testified the same. Hameed later

14

learned Syed paid himself a monthly salary of $12,500 between November of 2019 and May of 2020.  Hameed introduced an ADP printout listing the payments as an exhibit, and well as an email requesting Syed repay HS&S for unauthorized payroll payments made to him and his wife.  Hameed also testified about $93,000 in escrow funds Syed deposited into his personal account instead of HS&S's corporate account.  Syed's own witness, accountant Maz Afridi, testified that Syed paid himself as both an employee and a contractor.  He stated Syed paid himself $66,000 outside of payroll.  This testimony and the supporting exhibits provides substantial evidence for the court's award. [4]

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.          BALTODANO, J.

---

[4] Hameed and Singh move to dismiss, requesting we exercise our "inherent power to summarily dismiss any appeal which is designed for delay or which is based on sham or frivolous grounds." (*Zimmerman v. Drexel Burnham Lambert* (1988) 205 Cal.App.3d 153, 161.)  We have considered and deny the motion.

15

Ronda J. McKaig, Judge
Superior Court County of Ventura
_____


     Gusdorff Law, Janet Gusdorff, for Defendant and Appellant Kaleem Syed.

     Singer & Associates, Anne Singer, for Plaintiffs and Respondents Rashid Hameed, Gurmit Singh, and HS&S Restaurants, Inc.