Filed 9/19/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| DAVID SALAZAR, | |
| Plaintiff and Appellant, | E076006 |
| v. | (Super. Ct. No. CIVDS1920757) |
| WALMART, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. David S. Cohn, Judge. Reversed.

Robins Kaplan, Glenn A. Danas and Samia S. Young; Clarkson Law and Ryan J. Clarkson, for Plaintiff and Appellant.

Greenberg Traurig, Gregory A. Nylen, Robert J. Herrington and Dominic E. Draye, for Defendant and Respondent.

## I.

## INTRODUCTION

After David Salazar bought Walmart, Inc.'s "Great Value White Baking Chips" incorrectly thinking they contained white chocolate, he filed this class action against Walmart for false advertising under various consumer protection statutes. The trial court sustained Walmart's demurrers without leave to amend, finding as a matter of law that no reasonable consumer would believe Walmart's White Baking Chips contain white chocolate. We disagree and reverse.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Salazar went to Walmart to buy white chocolate chips. He bought some Great Value (Walmart's store-brand name) White Baking Chips,

which come in bags like this:



The bags are sold at Walmart on a shelf like this:

The chips are sold next to other chocolate chip products that contain milk chocolate or semi-sweet chocolate.

Salazar thought the White Baking Chips contain white chocolate because (1) their label describes them as "white," (2) their label depicts the product, which look like white chocolate chips, and (3) the product is sold next to other chocolate products. Because Salazar thought the White Baking Chips had real white chocolate, he bought some. He

later learned, however, that they contain no white chocolate.

Salazar brought a class action against Walmart alleging claims under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.), the False Advertising Law (FAL; Bus. & Prof. Code, § 17500 et seq.), and the Consumers Legal Remedies Act (CLRA; Civil Code, § 1750 et seq.). After Walmart successfully demurred to all three claims, Salazar filed his operative Third Amended Complaint (TAC), again alleging claims under the UCL, FAL, and CLRA.

The thrust of all three claims is that Salazar was reasonably misled to believe the White Baking Chips had real white chocolate because of the product's label and its placement near products with real chocolate. Salazar also alleges that the results of a survey he conducted show that 90 percent of consumers are deceived by the White Baking Chips' advertising and incorrectly believe they contain white chocolate.[1]

Walmart demurred to all three claims on the ground that no reasonable consumer would believe the White Baking Chips contain real white chocolate. The trial court agreed, sustained Walmart's demurrer without leave to amend, and entered judgment for Walmart. Salazar timely appealed.

---

[1] Salazar also alleges in the TAC that Walmart's website falsely advertised the White Baking Chips, but we do not consider that argument because Salazar does not raise it in his opening brief. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned."].) We therefore do not address Walmart's argument that Salazar lacks standing to assert claims based on its website.

III.

DISCUSSION

Salazar argues the trial court erred because he stated viable claims under the UCL, FAL, and CLRA.  We agree.

1.  *Standard of Review*

We "liberally construe[]" a complaint's allegations.  (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146.)  "'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed "if any one of the several grounds of demurrer is well taken.  [Citations.]"  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]"  (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206.)

2.  *Analysis*

The parties correctly agree that Salazar's claims are governed by the "reasonable consumer" test.  (*Skinner v. Ken's Foods, Inc.* (2020) 53 Cal.App.5th 938, 948 (*Skinner*) [reasonable consumer test applies to false advertising claims brought under the UCL, FAL, and CLRA].)  As applied here, that test asks whether a reasonable consumer would

4

likely be deceived into incorrectly believing that Walmart's White Baking Chips contain real white chocolate for the reasons Salazar advances. (*Ibid*.)

"'A "reasonable consumer" is "[an] ordinary consumer acting reasonably under the circumstances" [citation] . . . .' [Citation.] Such a consumer 'need not be "exceptionally acute and sophisticated,"' nor must they 'necessarily be wary or suspicious of advertising claims.' [Citation.] Rather, to meet the 'reasonable consumer' standard, 'a plaintiff need only show that members of the public are likely to be deceived' by the defendant's advertising. [Citation.] Members of the public are likely to be deceived by advertising that is false and by advertising that, '"although true, is either actually misleading or . . . has a capacity, likelihood, or tendency to deceive or confuse the public." [Citation.]' [Citation.]" (*Skinner*, *supra*, 53 Cal.App.5th at p. 948.)

"'"Likely to deceive" implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 226.)

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." (*Williams v. Gerber Products Co.* (9th Cir. 2008) 523 F.3d 934, 939; *Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 214 [noting

5

that "[t]he unsuitability of a demurrer to test the accuracy of a complaint is particularly marked" in false advertising cases].) Thus, whether a reasonable consumer is likely to be deceived as a matter of law may be decided "only in 'rare situation[s].'" (*Reid v. Johnson & Johnson* (9th Cir. 2015) 780 F.3d 952, 958.) This is because "[w]hat matters . . . is how consumers actually behave—how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." (*Bell v. Publix Super Markets, Inc.* (7th Cir. 2020) 982 F.3d 468, 481 (*Bell*); see also *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ["[The] determination of the likelihood of deception 'is an impressionistic one more closely akin to a finding of fact than a conclusion of law.'"].)

Salazar argues the White Baking Chips misleadingly suggest they are made with white chocolate. He points to the "white" in the product's name, the label's depiction of the product, the fact that it is sold near other chocolate products, and the results of a survey he conducted. Walmart contends that these allegations cannot support a claim under the UCL, FAL, or CLRA as a matter of law. We disagree.

Walmart emphasizes that the White Baking Chips label does not state "chocolate" anywhere and that the product's ingredient list confirms the chips have no white chocolate. Walmart thus argues that the label is not misleading because it contains no false statements.

6

Although the White Baking Chips' packaging may not have any false statements, literally true statements "'"couched in such a manner that [are] likely to mislead or deceive the consumer . . . [are] actionable."'" (*Skinner*, *supra*, 53 Cal.App.5th at p. 949.) As one court recently recognized, "[d]eceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning." (*Bell*, *supra*, 982 F.3d at p. 477.) California law thus does not require reasonable consumers "'to look beyond misleading representations on the front of [a product] to discover the truth from the ingredient list in small print on the [back of a product].'" . . . "'The ingredient list must *confirm* the expectations raised on the front [of the product], not contradict them.' [Citations.]" (*Skinner*, *supra*, at p. 949.) So if "the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." (*Ebner v. Fresh, Inc.* (9th Cir. 2016) 838 F.3d 958, 966.)

The question, then, is whether a reasonable consumer could find the White Baking Chips' truthful label to be deceptive or misleading. Walmart argues the label is not misleading as a matter of law because no reasonable consumer would believe the White Baking Chips are made of white chocolate. To support its position, Walmart relies mostly on *Cheslow v. Ghirardelli Chocolate Company* (N.D. Cal. 2020) 445 F.Supp.3d 8 (*Cheslow*).[2] We find *Cheslow* unpersuasive.

---

[2] Walmart also cites *Red v. Kraft Foods, Inc.* (C.D. Cal. Oct. 25, 2012, No. CV 10-1028-GWAGRX), 2012 WL 5504011, but that case has no relevance here. The plaintiffs' claim that the defendants' packaging was misleading because it stated the

*[footnote continued on next page]*

7

In that case, the district court found that no reasonable consumer would believe the defendant's "'Premium Baking Chips Classic White Chips'" contained white chocolate.[3] (*Cheslow*, *supra*, 445 F.Supp.3d at p. 12.) Relying on the Ninth Circuit's analysis in *Becerra v. Dr Pepper/Seven Up, Inc.* (9th Cir. 2019) 945 F.3d 1125 (*Becerra*), of how "diet" is usually an adjective in the context of "diet soda," the *Cheslow* court found that "the adjective 'white' in 'White Chips' does not define the food itself but rather defines the color of the food." (*Cheslow*, *supra*, at p. 17.)

To reach this conclusion, the district court relied on two dictionary definitions of "white" to conclude that "the use of the term 'white' does not lend itself to defining the quality of the [White Chips]." (*Cheslow*, *supra*, 445 F.Supp.3d at p. 17.) One of those dictionary definitions defines "white" as an adjective "'used in the names of various food

_____

crackers were "Made with Real Vegetables" failed because the crackers were, in fact, made with real vegetables. (*Id*. at *2 ["[T]he challenged phrase 'Made with Real Vegetables' is, as Plaintiffs concede, a true representation."].) Walmart next cites *Werbel ex rel.v. Pepsico, Inc.* (N.D. Cal. July 2, 2010, No. C 09-04456 SBA) 2010 WL 2673860, but that case is easily distinguishable. The plaintiffs there alleged that the packaging of "Cap'n Crunch's Crunch Berries" misled consumers into believing that the cereal contained real fruit. In our view, the district court correctly concluded that no reasonable consumer would "believe that the brightly-colored cereal balls depicted on the product cover and described as Crunch Berries are, in fact, made or derived from real berries or fruit." (*Id*. at *p. 4; see also *Bell*, *supra*, 982 F.3d at p. 493 (Kanne, J., concurring) ["Courts have used similar common-sense arguments to dismiss labeling claims when no reasonable consumer could actually believe the plaintiffs' alleged interpretation. The California breakfast cereal cases are good examples of this, where courts dismissed claims that the colorful rings and balls of cereal shown on 'Froot Loops' and 'Cap'n Crunch' boxes promised real fruit within."]

[3] The *Cheslow* court relied on this analysis to later dismiss the plaintiff's claims without leave to amend. (*Cheslow v. Ghirardelli Chocolate Company* (N.D.Cal. 2020) 472 F.Supp.3d 686, 693.)

and drink products, many of which are not pure white but slightly cream, yellow, gray, or transparent.'" (*Id*., quoting Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/white.) That same definition then lists examples of "white" foods, such as "white chocolate," "white bread," and "white wine," but does not define the foods further. (*Ibid*.) This highlights an ambiguity in the term "white chocolate": it could mean chocolate that is white-colored *or* white chocolate itself. This shows that "white" can sometimes describe the quality of the food, not just its color. We therefore disagree with *Cheslow*'s holding that "white" in the context of baking chips could *only* be reasonably understood as "defin[ing] the color of the food" as a matter of law. (*Cheslow*, *supra*, at p. 17; see also *Mantikas v. Kellogg Company* (2d Cir. 2018) 910 F.3d 633, 638 [reversing dismissal on the pleadings because "Whole Grain" cracker label could be reasonably read as promising either predominantly whole grain or only some whole grain].)

We also find the *Cheslow* court's reliance on *Becerra* misguided because *Becerra* is distinguishable. In *Becerra*, the Ninth Circuit considered whether "the word 'diet' in Diet Dr Pepper's brand name promises that the product will assist in weight loss or healthy weight management." (*Becerra*, *supra*, 945 F.3d at p. 1229.) *Becerra* thus turned only on the meaning of the word "diet" on a soda can's label. This case, however, concerns the White Baking Chips' packaging as a whole, which includes a descriptor of the chips as "white" *and* a picture of what appears to be a white-colored chocolate chip.

9

Salazar also contends Walmart's placement of the chips near other real-chocolate-containing chips is misleading while the *Becerra* plaintiff made no similar allegations.

Whether "white" as an adjective describes a food's color or "defin[es] the quality of the product" depends on the context. (*Cheslow*, *supra*, 445 F.Supp.3d at p. 17.) As for Walmart's White Baking Chips, "white" could reasonably be interpreted as an adjective describing the color of the chips. But the White Baking Chips' label cannot "only be read" in one way that "eliminates any possibility of deception." (*Bober v. Glaxo Wellcome PLC* (7th Cir. 2001) 246 F.3d 934, 940.)

Rather, "white" also could reasonably be interpreted as shorthand for "white chocolate." The White Baking Chips look like chocolate chips, they are sold next to other real chocolate chip products, and their label depicts them on cookies to show they can be used for baking like chocolate chips. A reasonable consumer might know there are white chocolate chips used for baking while not knowing that white-colored baking chips that do not contain white chocolate exist. When viewed in that context, a reasonable consumer could reasonably be misled to believe that the chips are white chocolate chips, because the consumer would not be aware that the chips could be something else. (See *Bell*, *supra*, 982 F.3d at p. 481 [noting that "many grocery shoppers make quick decisions that do not involve careful consideration of all information available to them"]; *Fink v. Time Warner Cable* (2d Cir. 2013) 714 F.3d 739, 742 ["[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."].)

10

Salazar thus plausibly alleges that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the White Baking Chips' advertising. (*Chapman v. Skype Inc.*, *supra*, 220 Cal.App.4th at p. 226; see also *Skinner*, *supra*, 53 Cal.App.5th at p. 948.) This is not one of those "rare situations" where we can decide on a demurrer that Walmart's White Baking Chips are not deceptive or misleading as a matter of law. Whether a reasonable consumer is deceived or misled into believing that the chips contain white chocolate is not properly resolved at the pleading stage. (See *Brady v. Bayer Corp.* (2018) 26 Cal.App.5th 1156, 1164-1165 [holding demurrer was "improvidently granted" because whether a product's advertising is deceptive is a fact determination that "'usually cannot be made on demurrer'"]; *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134-135 ["Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."].) Because Salazar stated viable claims under the UCL, FAL, and CLRA, we reverse the judgment.

## IV.

## DISPOSITION

The judgment is reversed.  Salazar may recover his costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
Acting P. J.

We concur:


RAPHAEL
                J.


MENETREZ
                J.